T.C. Memo. 2014-239

UNITED STATES TAX COURT

JAMES B. BUDISH, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4243-12L.                    Filed November 24, 2014.

P, a sculptor who works in cast bronze and sells his artwork
through a wholly owned S corporation, filed a Federal income tax
return for 2007 on which he self-reported a tax due of $163,928 that
he failed to remit with his return. R assessed the unpaid tax plus
certain additions to tax and interest, which totaled more than
$200,000 and, thereafter, issued a notice of intent to levy. P
requested and received a collection due process (CDP) hearing, which
resulted in his agreeing with the Appeals officer on the terms of an
installment agreement for full payment of his assessed liability. On
the basis of her interpretation of relevant provisions of the Internal
Revenue Manual (IRM) the Appeals officer insisted upon the filing of
a notice of lien as a condition of entering into the installment
agreement. P argued that a notice of lien would destroy his sculpting
business, rendering him unable to satisfy the terms of the installment
agreement, and he rejected the Appeals officer's proposal. Appeals
then issued a notice of determination sustaining the notice of levy and
authorizing collection by levy of the assessed liability. P filed a

[*2] petition with this Court pursuant to I.R.C. sec. 6330(d)(1) alleging that the Appeals officer abused her discretion by misinterpreting the requirements of the IRM and believing she had no choice but to require that a notice of lien be filed in conjunction with the installment agreement.

     1. Held: The Appeals officer erroneously concluded that the IRM required the filing of a notice of lien in the circumstances of this case.

     2. Held, further, as a result, the Appeals officer failed to properly balance the need for the efficient collection of P's liability with P's legitimate concern that collection action be no more intrusive than necessary as required by I.R.C. sec. 6330(c)(3)(C).

     3. Held, further, Appeals' determination to sustain the notice of levy and proceed with collection by levy is rejected and the case will be remanded to Appeals for a supplemental CDP hearing with directions to perform the balancing of factors required by I.R.C. sec. 6330(c)(3)(C) before determining the appropriate collection action.

Theodore H. Merriam, Kevin A. Planegger, and Olena Ruth, for petitioner.

Michael T. Garrett, Sara J. Barkley, and Matthew A. Houtsma, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge: This case is before the Court to review a determination by the Internal Revenue Service's Appeals Office (Appeals) following a collection

**[*3]** due process (CDP) hearing conducted pursuant to section 6330(b) and (c).[1] Appeals determined that respondent may proceed to collect by levy petitioner's unpaid 2007 Federal income tax. We review Appeals' determination pursuant to section 6330(d)(1). Petitioner assigns error to Appeals' determination on the ground that Appeals abused its discretion in conditioning abandonment of the levy on both an installment agreement, which petitioner would accept, and the filing of a notice of tax lien (or, alternatively, petitioner's posting of a bond), which petitioner would not accept.

## FINDINGS OF FACT

Introduction

This case was submitted for decision without trial pursuant to Rule 122. The parties have stipulated certain facts and the authenticity of certain documents. The facts stipulated are so found, and the documents stipulated are accepted as authentic. When he filed the petition, petitioner resided in Highland Park, Illinois.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all dollar amounts to the nearest dollar.

**[*4]** Petitioner's Income-Producing Activities

Petitioner is a sculptor who works in cast bronze and sells his artwork through his wholly owned S corporation, Jim Budish Sculptor, Ltd. (Sculptor, Ltd.), for which he is a salaried employee. Over the years, petitioner has relied on a particular Arizona foundry (Metalphysic Sculpture Studio, Inc.) (foundry) to provide the material he uses in his sculptures and to do the actual casting. Typically, the sculptures are commissioned by the buyers who pay for them before casting. Thus, petitioner does not maintain an inventory from which he regularly sells his sculptures.

Petitioner's Tax Reporting for 2007

Petitioner filed his 2007 Federal income tax return (2007 return) late, on October 21, 2008. On that return, he reported a tax liability of $164,928 and a withholding credit of $1,000. He failed to remit the $163,928 balance due with his return.

Respondent's Assessment and Collection Efforts

On November 17, 2008, respondent assessed the tax shown on the 2007 return, along with accrued interest and with additions to tax for petitioner's failures (1) to timely pay tax and (2) to pay estimated income taxes. Respondent

**[\*5]** immediately notified petitioner of the balance due. Petitioner has not paid that balance.

On November 9, 2009, respondent notified petitioner of (1) his intent to collect by levy petitioner's unpaid 2007 liability (then totaling $205,549) and (2) petitioner's right to a pre-levy CDP hearing.

The CDP Hearing and Related Negotiations With Appeals

Petitioner timely requested the hearing. In the request, petitioner in essence claimed that collection by levy was inappropriate since less intrusive methods of collection, including an installment agreement, were available. Petitioner also requested an abatement of the section 6651(a)(2) addition to tax on the ground that "'reasonable cause' exists for the taxpayer's failure to pay his taxes timely."

Petitioner's CDP hearing was conducted by an Appeals settlement officer (Appeals officer). Petitioner was represented by his counsel, initially Garret M. Francis, then Theodore H. Merriam (without distinction, counsel).

The Appeals officer met with counsel on April 27, 2011. Neither then nor thereafter did petitioner challenge his underlying tax liability. Counsel asked for an installment agreement to settle petitioner's 2007 liability, and, in connection with that request, he advised the Appeals officer that an ongoing custody dispute with the mother of petitioner's minor son had, thus far, cost petitioner over

[*6] $400,000 in legal fees and related costs and that petitioner was financially responsible for the care of his mother, who required a full-time nurse. Counsel and the Appeals officer reviewed the collection information that petitioner had furnished to Appeals, which showed that petitioner had personal assets consisting of $1,691 in cash, negative equity in his personal residence, an automobile worth $4,000, and various personal assets worth $1,000. It also showed monthly income of $19,816 and monthly living expenses of $21,785. They discussed the possibility of an installment agreement, but the Appeals officer wanted additional financial information and supporting documentation, which counsel provided to her in mid-May.

One day after their meeting, counsel called the Appeals officer and offered that petitioner would enter into an installment agreement obligating him to pay $5,500 per month until his tax liability was discharged but on the condition that respondent refrain from filing a notice of tax lien. The Appeals officer responded that it was in the Government's best interest to file a notice of lien because petitioner's tax liability exceeded $200,000.

In mid-May 2010, by letter to the Appeals officer, counsel argued that a notice of lien would hamper rather than facilitate collection of petitioner's liability by effectively putting him out of business, thereby terminating the flow of income

[*7] necessary to honor the installment agreement and, ultimately, to discharge petitioner's outstanding liability. Specifically, counsel represented that, should respondent file a notice of lien, petitioner's longstanding business relationship with the foundry, from which he normally received 30%-50% discounts from market pieces, would be drastically altered in that he would be required to immediately pay for all work previously produced and make "up front" payments for all future work. In that connection, counsel furnished a copy of a letter from the foundry's president to petitioner, in which the former stated:

1.    [If] [f]or any reason payments due us are suspended or delayed, production of your work will cease.

2.    For any further production to continue if this were to happen, we would require any outstanding balances to be paid in full, and also the full amount for any order that is placed with us.

3.    These conditions will remain in place until such time as we feel comfortable that the situation has been resolved to our satisfaction.

Counsel also represented that a notice of lien would cause the buyers of petitioner's sculptures to cease financing petitioner by paying on a commission basis (i.e., up front) for artwork they might never receive because of petitioner's financial difficulties or because the artwork "may be encumbered by either the tax lien or other debtors [sic]."

**[*8]** Finally, counsel represented that the lien notice would adversely affect petitioner's ability to pay the foundry using his American Express credit card because of the detrimental effect on his credit rating.

Notwithstanding counsel's argument against the filing of a notice of lien, the Appeals officer, in August 2011, offered, as a collection alternative, "to grant Mr. Budish a $5,500 installment agreement", but she conditioned that offer on the filing of a lien notice. Because of her insistence on the lien notice, petitioner rejected her offer (and, by implication, her earlier offer to accept a bond in lieu of the lien notice filing). The Appeals officer then closed out her case and recommended that Appeals sustain the proposed levy.

Notice and Attachment

On January 12, 2012, Appeals, in the person of Teresa Cismowski, Appeals team manager, issued to petitioner a notice of determination (notice) sustaining the proposed levy action. While the notice contains only a summary explanation of Appeals' reasons for sustaining the levy ("The Notice of Intent to Levy was issued properly. Compliance is free to levy as they see fit."), Ms. Cismowski attached to the notice the Appeals officer's recommendation, which apparently underlies Appeals' determination. In a section of the attachment entitled "Brief Background", the Appeals officer notes that, in response to petitioner's request that

[*9] no notice of lien be filed in conjunction with the agreed-upon installment agreement, she "advised * * * [petitioner's counsel] that * * * [she] was in agreement with the installment agreement however the Taxpayer's balance due is over $200,000 and the NFTL [notice of Federal tax lien] would be filed to protect the government's interest."  In a section entitled "Discussion and Analysis", under the heading "Collection Alternatives Offered by Taxpayer", she concludes as follows:

> The Taxpayer requested an installment agreement instead of levy action and also requested no NFTL be filed.  IRM 5.14.1.4.2 requires a lien filing determination be made prior to granting an installment agreement.  IRM 5.12.2.4 requires a[n] NFTL be filed if an installment agreement does not meet streamlined, guaranteed, or in-business trust fund express criteria.  The Taxpayer's installment agreement request does not meet these criteria; therefore the filing of the NFTL would be required as a condition of the installment agreement.
>
> You have failed to show how withholding the lien filing would be in the best interest of the government and facilitate collection.
>
> I advised the POA I could accept the installment agreement but that the NFTL would be filed as a condition of the installment agreement. The POA refused to enter into the installment agreement and said he would take the matter to tax court.

The Appeals officer's explanation of her determination to enforce the levy concludes as follows:

**[*10]** The Notice of Intent to Levy was issued properly. You requested an installment agreement instead of levy action but refused to agree to the filing of the NFTL. As such levy action, although intrusive, balances the need for efficient collection of the tax with your legitimate concern that collection action be no more intrusive then [sic] necessary. Compliance may levy as they see fit.

OPINION

I.  Levies and CDP

Section 6331(a) authorizes the Secretary to levy upon property and property rights of a taxpayer liable for taxes who fails to pay those taxes within 10 days after notice and demand for payment is made. Section 6331(d) requires that the Secretary give at least 30 days' written notice to the taxpayer of his intent to levy, and section 6330(a) requires the Secretary to send the taxpayer written notice of his right to a hearing before Appeals at least 30 days before any levy begins.

If the taxpayer requests a hearing in response to a notice of levy, he may raise at the hearing "any relevant issue relating to the unpaid tax or the proposed levy", including challenges to the appropriateness of the levy and collection alternatives such as an installment agreement or an offer-in-compromise. Sec. 6330(c)(2)(A). He may also challenge the existence or amount of the underlying tax liability if he did not receive a statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute the tax liability. See

[*11] sec. 6330(c)(2)(B).  Petitioner does not challenge herein the existence or amount of his underlying liability.[2]

Following the hearing, the Appeals officer conducting the hearing must determine whether the collection action is to proceed, taking into account his verification of the Secretary's compliance with "the requirements of any applicable law or administrative procedure", the issues raised by the taxpayer at the hearing, and whether the collection action "balances the need for the efficient collection of taxes with the legitimate concern of the * * * [taxpayer] that any collection action be no more intrusive than necessary."  Sec. 6330(c)(3).  As stated, we have jurisdiction to review such determinations.  See sec. 6330(d)(1).

Where the underlying tax liability is properly at issue, we review the determination de novo.  E.g., Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Where, as here, the underlying tax liability is not at issue, we review the determination for abuse of discretion.  Id. at 182.  In reviewing for abuse of discretion, we must uphold the Appeals officer's determination unless it is arbitrary, capricious, or without sound basis in fact or law.  See Murphy v.

_____

[2]Petitioner does not assign error to Appeals' refusal to abate the sec. 6651(a)(2) addition to tax, and he has since reiterated that concession to the Court.  Therefore, the sole issue before us is whether Appeals abused its discretion by rejecting petitioner's proposal for an installment agreement without the filing of a notice of lien and sustaining the proposed levy.

[*12] Commissioner, 125 T.C. 301, 308, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

II.    Parties' Arguments

    A.    Petitioner

Petitioner argues that the Appeals officer "erroneously determined that * * * [a notice of lien] must be filed as a condition of petitioner's installment agreement based solely upon the amount of unpaid tax and, therefore * * * [she] clearly abused her discretion by misinterpreting the law, the accompanying Treasury regulations and respondent's Internal Revenue Manual."  Petitioner argues that, in so doing, she violated the requirement, in section 6330(c)(3)(C), that she "balance[] the need for the efficient collection * * * [action] with the legitimate concern * * * that any collection action be no more intrusive than necessary."  In addition, petitioner argues that the reasoning and rationale of section 6323(j)(1)(B)-(D), which sets forth criteria pursuant to which the Commissioner may withdraw a previously filed notice of lien (one of which is the entering into of an installment agreement under section 6159), are applicable to demonstrate that a notice of lien is unnecessary in the circumstances of this case.

In support of his arguments, petitioner points to the Appeals officer's conclusion in her recommendation attached to the notice that "IRM 5.12.2.4

**[*13]** requires a[n] NFTL be filed if an installment agreement does not meet streamlined, guaranteed, or in-business trust fund express criteria."[3]  He concludes that she "misinterpreted the tax law in * * * [demanding] that the lien be filed as a prerequisite to formalizing the installment payment agreement", and he cites Lofgren Trucking Serv., Inc. v. United States, 508 F. Supp. 2d 734 (D. Minn. 2007), in which the court found that an Appeals officer abused his discretion in rejecting the taxpayer's offer of an installment agreement and deciding to proceed with a levy solely on the ground that he was not currently meeting his employment tax deposit obligations.  After finding that the Appeals officer had based his determination on the mistaken belief that that fact precluded him from acting otherwise, the court found that he had not "engaged in the requisite balancing test to determine whether * * * [the taxpayer's] payment plan satisfied the government's interest in the efficient collection of taxes", and it ordered the case to be remanded to the IRS for consideration of the taxpayer's installment agreement proposal.  Id. at 739-740.

---

[3]The referenced terms refer to types of installment agreements that may be processed quickly because they involve relatively modest unpaid assessments and circumstances in which it is likely that the Government will receive payment in full under the proposed agreement.  See Internal Revenue Manual (IRM) pt. 5.14.5.1-4 (May 23, 2014).

**[*14]** Petitioner argues that, like the Appeals officer in <u>Lofgren Trucking</u>, the Appeals officer "ignored the statutory mandate of I.R.C. § 6330(c)(3)(C) to legitimately balance and weigh the interests of efficient governmental collection of taxes against the taxpayer's legitimate concern that collection action be no more intrusive than necessary."  In describing those concerns, petitioner basically reiterates the arguments he made to the Appeals officer; i.e., that a notice of lien would (1) alter his working relationship with the foundry, which would cease production and demand, up front, full payment for all ongoing and future work should he delay or suspend payments to it and (2) cause buyers of his work to be unwilling to prepay for it, the combination of those two events rendering him unable to produce sculptures, his only source of income.  Petitioner also reiterates that the notice of lien filing "will destroy * * * [his] credit" and, therefore, risk having American Express curtail or eliminate his ability to use his American Express credit card to pay the foundry for his materials and casting costs. Petitioner concludes that it is in respondent's interest not to file a notice of lien as that will enhance, rather than effectively destroy, his ability to discharge his delinquent tax liability.

Petitioner asks that we remand the case to Appeals with instructions "to enter into the installment agreement proposed by petitioner without the filing of

**[\*15]** \* \* \* [a notice of lien]." Alternatively, he asks that we remand for Appeals' "review and consideration of all petitioner's facts and circumstances \* \* \* [to determine whether the lien filing is necessary]."

B.     Respondent

Respondent argues that he has "discretionary authority" under section 6159(a)[4] to enter into an installment agreement and that section 301.6159-1(c)(3)(iii)(B), Proced. & Admin. Regs., authorizes the filing of a notice of lien as a condition thereof ("the Commissioner may require that \* \* \* [t]he agreement contain terms that protect the interests of the Government."). He further argues that the Court may not "conduct an independent review of what would be an acceptable collection alternative" nor may it "substitute its judgment for that of \* \* \* [the] Appeals Office when reviewing a collection alternative for an abuse of discretion", citing Murphy v. Commissioner, 125 T.C. at 320.

In respondent's view, the administrative record demonstrates that the Appeals officer's insistence on a notice of lien as a condition for entering into the installment agreement was reasonable, citing petitioner's nonpayment of his 2007 Federal income tax liability (other than a $1,000 withholding credit) and his

---

[4]Sec. 6159(a) authorizes the Secretary to enter into an installment agreement upon determining that the proposed agreement would facilitate full or partial collection of the taxpayer's liability.

**[*16]** continued ability to earn substantial income after 2007, "which could have been used to pay" that liability. Respondent also cites caselaw to the effect that damage to a taxpayer's credit rating or actual financial harm to him does not necessarily negate the Commissioner's discretion to determine whether it is in the Government's interest to file a notice of lien. See, e.g., Kehoe v. Commissioner, T.C. Memo. 2013-63, at *12 (holding that the Commissioner did not abuse his discretion in refusing to withdraw a notice of lien, in conjunction with the execution of an installment agreement, where the taxpayers had a history of tax compliance and demonstrated they would be financially harmed by the lien). Moreover, respondent challenges for lack of evidence beyond counsel's unsubstantiated statements petitioner's claim that a lien would affect either the demand for his sculptures or his business relationships (e.g., with the foundry), and he concludes that that lack of evidence supports the reasonableness of the Appeals officer's determination "that declining to file * * * [a notice of lien] would not facilitate collection in this case."

Citing petitioner's failure to pay any significant portion of his 2007 liability and the lack of evidence of harm to his ability to generate income from his business, respondent also rejects petitioner's reliance on the principles of section 6323(j) as mandating the nonfiling of a notice of lien in this case.

[*17] III.    Analysis

A.    Introduction

We must decide whether, as a condition of entering into an installment agreement with petitioner (the terms of which were agreed to), the Appeals officer abused her discretion by insisting on the filing of a notice of lien. Not at issue is petitioner's ability to immediately discharge his tax liability in full. The Appeals officer's willingness to enter into an installment agreement with petitioner demonstrates her agreement that the financial strains on petitioner, presumably, including his child support obligations, legal fees, and the costs related to his mother's care, were sufficient to justify the discharge of his 2007 tax liability over time. At issue is whether the Appeals officer, by requiring that a notice of lien be filed as a condition of entering into the installment agreement, acted arbitrarily and capriciously.

B.    Basis for the Appeals Officer's Insistence on a Notice of Lien

As noted supra, in an attachment to the notice the Appeals officer gave two specific reasons for insisting that a notice of lien be filed, both of which were based on her interpretation of provisions of the Internal Revenue Manual (IRM).[5]

---

[5]We have previously upheld the Commissioner's determinations based, in part, on provisions of the IRM. See, e.g., Orum v. Commissioner, 123 T.C. 1, 13
(continued...)

**[\*18]** The first reason was that the balance due of over $200,000 required that a notice of lien be filed in order to "protect the government's interest". Presumably, the Appeals officer felt constrained to file a notice of lien by IRM pt. 5.12.2.4.1 (Oct. 30, 2009), which states that, "[i]n general", a notice of lien "should be filed" under certain specified circumstances, including circumstances in which (1) the unpaid balance of assessment is $5,000 or more or (2) "an installment agreement does not meet streamlined, guaranteed, or in-business trust fund express criteria."

The Appeals officer's second stated reason for insisting on a notice of lien filing was that "IRM 5.12.2.4 requires a[n] NFTL be filed if an installment agreement does not meet streamlined, guaranteed, or in business trust filed express criteria."

We agree with petitioner that, in both cases, the Appeals officer misinterpreted and, in fact, overstated the directives set forth in the cited IRM provisions in determining that the filing of a notice of lien was required.

In IRM pt. 5.12.2.4.1, the term "in general" in describing the circumstances, including the existence of large, outstanding liabilities, under which a notice of lien "should be filed" clearly indicates that there may be occasions in which it is

---

[5](...continued)
(2004), aff'd, 412 F.3d 819 (7th Cir. 2005).

**[*19]** not necessary to file a notice of lien, even where such circumstances exist. As petitioner suggests, the filing of a notice of lien might not be in the Government's best interests in this case if, as petitioner argues, the lien would hamper rather than foster collection of his outstanding liability. In arguing that this case presents one of those occasions in which a notice of lien would be counterproductive for respondent, petitioner points to the nominal amount of his net assets as compared with that liability and also to the fact that a notice of lien filing would put him out of business, thereby cutting off the only source of funds sufficient to discharge his liability and making it impossible for him to honor his commitment under the installment agreement. As discussed infra, the record does not establish the Appeals officer's basis for rejecting those arguments and opting to enforce the levy.

It is also clear that IRM pt. 5.12.2.4 (Oct. 30, 2009) lists circumstances under which an "NFTL filing determination must be made", not circumstances under which a notice of lien must be filed. Thus, pursuant to IRM pt. 5.12.2.4, the Appeals officer was required to make a lien filing "determination", which petitioner does not dispute; but she was not required, by that provision, to determine that a notice of lien be filed.

**[*20]** We also note that IRM pt. 5.12.2.4.2 (Oct. 30, 2009), which the Appeals officer does not discuss in her recommendation, states, in paragraph 4, that "[a] decision may be made to defer the filing of a[n] NFTL when the revenue officer can document a <u>reasonable certainty</u> that filing the NFTL will hamper collection."[6] (Emphasis added.) Thus, contrary to the Appeals officer's apparent belief to the contrary, the IRM does not require the filing of a notice of lien.

C.       The Appeals Officer's Compliance With Section 6330(c)(3)(C)

There are two statements in the Appeals officer's recommendation that, arguably, indicate that she tried to balance the need for a notice of lien against petitioner's concern that such action be more intrusive than necessary, as she was required to do under section 6330(c)(3)(C). First is her statement that petitioner "failed to show how withholding the lien filing would be in the best interest of the government and facilitate collection." Second is her final conclusion:

> The Notice of Intent to Levy was issued properly. You requested an installment agreement instead of levy action but refused to agree to the filing of the NFTL. As such levy action, although intrusive, balances the need for efficient collection of the tax with your legitimate concern that collection action be no more intrusive then [sic] necessary. Compliance may levy as they see fit.

---

[6]There is no reason to assume that the quoted language does not apply to Appeals officers as well as to revenue officers, i.e., we assume that it applies to all IRS personnel required to determine the need to file a notice of lien.

[*21] The Appeals officer does not explain her basis for the first statement. Did she not believe petitioner's representation that, absent the income from his sculpting business, he had few assets to which a Federal lien would attach; i.e., did she believe that petitioner filed an erroneous Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals? Alternatively, did she disbelieve petitioner's representation that a notice of lien would make it impossible for him to continue to generate sufficient income from his sculpting business to satisfy his obligations under the proposed installment agreement? Whether or not, as respondent argues, petitioner failed to prove the truth of that representation, there is no indication that the Appeals officer actually weighed and, after consideration, rejected it as a basis for not filing a notice of lien, as she was required to do by section 6330(c)(3)(C). Rather, it appears that she felt constrained to require a notice of lien filing by virtue of what she erroneously considered the mandate of the IRM and that the inclusion of her statement that petitioner "failed to show" that not filing of a notice of lien would be in the Government's best interest and facilitate collection was, in effect, surplusage or boilerplate, included merely for the sake of completeness.

The same may be said of the Appeals officer's concluding statement. After noting petitioner's refusal to agree to the filing of a notice of lien, she states: "As

[*22] such levy action, although intrusive, balances the need for efficient collection of the tax with your legitimate concern that collection action be no more intrusive then [sic] necessary." As written, the sentence is incomplete and without meaning, i.e., "as [i.e., because] such levy action, although intrusive, balances the need for efficient collection of the tax with * * * [petitioner's] legitimate concern * * * [regarding unnecessary intrusiveness]", then what? The "what" is missing from the sentence. We assume the Appeals officer meant to conclude the sentence by stating that levy action is warranted. But, again, there is no analysis of what might have led her to conclude that levy action will balance the need for efficient collection of tax with petitioner's concern that it would be unnecessarily intrusive.

Respondent cites Lipson v. Commissioner, T.C. Memo. 2012-252, at *8-*10, for the principle that an Appeals officer may reject an installment agreement "despite her [mis]interpretation of the IRM". Setting aside the fact that this case, unlike Lipson, involves the need to file a notice of lien in conjunction with an acceptable installment agreement, not the need to accept the installment agreement itself in lieu of a levy, the facts in Lipson establish that there were many factors that the Appeals officer did take into account, which justified her decision to reject the proposed installment agreement and sustain the levy. Id. at *9. That is not true in this case.

[*23] Respondent also cites several cases in support of his argument that in the context of an executed or proposed installment agreement, even though the filing of a notice of lien could harm a taxpayer's credit rating or otherwise cause financial harm to the taxpayer, that is not a reason to withdraw or forbear from filing it. See, e.g., Kehoe v. Commissioner, at *13; Berkery v. Commissioner, T.C. Memo. 2011-57, 2011 WL 820834, at *5; Crisan v. Commissioner, T.C. Memo. 2007-67, 2007 WL 858731, at *3. In each of those cases, however, it is clear that the Appeals officer duly considered the taxpayer's contentions and either found no evidence that the notice of lien would impair the taxpayer's ability to pay his or her tax obligations (Berkery and Crisan) or, on balance, reasonably determined that the lien was necessary to protect the Government's interests (Kehoe). In this case, petitioner presented evidence of potential financial hardship, which the Appeals officer does not appear to have rejected as unsubstantiated but, nonetheless, did reject simply because she apparently felt she had no other choice under the IRM.

With respect to petitioner's allegation that he possessed few assets to which a lien might attach, respondent cites Hughes v. Commissioner, T.C. Memo. 2011-294, 2011 WL 6440298, at *3, for the proposition that a Federal lien attaches to both a taxpayer's current and future assets. But petitioner argues that the filing of

**[*24]** a notice of lien would cut off his only source of potential future assets, the income from the production and sale of his sculptures, and it does not appear that the Appeals officer considered the merits of petitioner's claim in deciding whether a notice of lien should be filed.

In short, all of the foregoing authorities respondent cites involve Appeals officers who considered the taxpayer's claims that a notice of lien was unwarranted or counterproductive and reasonably determined that the lien would not be unnecessarily intrusive and that it was necessary to protect the interests of the Government. In this case, however, we find that the Appeals officer gave little, if any, consideration to petitioner's arguments and, instead, decided a notice of lien should be filed because of her mistaken belief that she lacked discretion to do otherwise under the IRM. Therefore, we find that the Appeals officer did not balance the need for the efficient collection of taxes with petitioner's legitimate concern that the collection action (i.e., the notice of lien) be no more intrusive than necessary, as required by section 6330(c)(3)(C). By failing to perform that function, she abused her discretion in sustaining the levy against petitioner's assets.[7]

---

[7]This case is unusual in that, unlike the cases respondent cites in which the allegedly intrusive collection action was the filing of a notice of lien, here,

(continued...)

[*25] D.    The Need To Remand the Case to Appeals

We have, in the past, ordered a CDP case to be remanded for further consideration by Appeals where we found that the Appeals officer did not consider all the pertinent issues or facts during the initial hearing.  See, e.g., Eichler v. Commissioner, 143 T.C. __, __ (slip op. at 17) (July 23, 2014); Isley v. Commissioner, 141 T.C. 349, 374-375 (2013); Crosswhite v. Commissioner, T.C. Memo. 2014-179, at *28-*29.  See also Lofgren Trucking Serv. Inc., 508 F. Supp. 2d at 739-740, cited by petitioner, in which the court remanded the case for further consideration by the Appeals officer where, as we find here, he failed to discuss "balancing" factors or furnish a relevant basis for his rejection of the taxpayer's proposal to satisfy an outstanding tax liability.  This case appears to fall within the rationale of those cases, and therefore it warrants remand to Appeals.

On remand we anticipate that the Appeals officer assigned the case will want to investigate, facilitated by petitioner's furnishing supporting documentation or affidavits where necessary, petitioner's representations that the mere filing of a notice of lien will cause the foundry to drastically and unfavorably alter its

---

[7](...continued)
petitioner is alternatively threatened with two intrusive collection actions:  the filing of a notice of lien, which, because of its rejection by petitioner as an accompaniment to the proposed installment agreement, has given way to the Appeals officer's sustaining the levy against petitioner's assets.

[*26] working relationship with him and cause his customers to do the same, both resulting in a sharp decrease or stoppage of his income from the production and sale of sculptures, thereby causing him to default on the proposed installment agreement. In that connection we agree with respondent that counsel, in a letter to the Appeals officer, overstated the foundry's reaction to the possibility of a Federal tax lien against petitioner's assets. The foundry did not cite that possibility as "the impetus" for its proposed changes in its business relationship with petitioner. Rather, it cited the actual suspension or delay of payments due it as the linchpin of those changes.

We also anticipate that the Appeals officer will make a judgment as to the accuracy of petitioner's representations regarding the value of his assets and the amount of his cashflow that might be subject to a Federal lien. In that connection, petitioner might want to make further arguments or submissions concerning whether the foundry work in process and/or the finished products are assets belonging to him, to Sculptor, Ltd., or, by virtue of their advance payments, to his customers. Presumably, a notice of lien against petitioner's assets would not attach to the assets of either Sculptor, Ltd., or its (petitioner's) customers.

Petitioner might also want to explain why his rejection of a bond in lieu of a notice of lien, because of cost or otherwise, is reasonable under the circumstances.

[*27] Lastly, we think it advisable that the Appeals officer, with the assistance of his or her counsel, if needed, consider the impact, if any, on his or her determination of section 6323(b)(3), which provides that a Federal notice of lien "shall not be valid" against a purchaser of tangible personal property purchased at retail in the ordinary course of the seller's trade or business unless, at the time of purchase, the purchaser actually intends the purchase to (or knows that it will) "hinder, evade, or defeat" the collection of tax. Section 301.6323(b)-1(c)(2), Proced. & Admin. Regs., defines "retail sale" to mean "a sale, made in the ordinary course of the seller's trade or business, of tangible personal property of which the seller is the owner." That definition would appear to cover the sculptures sold on petitioner's behalf by Sculptor, Ltd. Should it be determined that section 6323(b)(3) does apply herein, its application would appear to weaken both parties' positions. On the one hand, the Government's lien would not be valid as against a purchaser's interest in petitioner's sculptures, which would mean, assuming petitioner's representations with respect to his lack of other valuable assets are true, that a lien would do little to protect the Government's interests and, therefore, might not be necessary. On the other hand, the failure of the lien to have priority over a purchaser's interest in the sculptures would negate petitioner's argument that it would effectively put him out of business. In any event, it would be up to

[*28] the Appeals officer, on remand, to weigh the impact of section 6323(b)(3) on the need to file a notice of lien in conjunction with the installment agreement.

IV.    Conclusion

We will remand this case to Appeals for further consideration at a supplemental hearing in accordance with this opinion and for the issuance of a supplemental notice.[8]  In reconsidering the matter, Appeals is, of course, free to sustain the levy or to offer any collection alternative in lieu of levy enforcement that it deems reasonable and that is within the dictates of section 6330(c)(3)(C). That, of course, would include a collection alternative differing from the one discussed with petitioner after the initial CDP hearing as justified by any change in circumstances or other relevant factors.  See Eichler v. Commissioner, 143 T.C. at __ (slip op. at 17).

An appropriate order will be issued.

_____

[8]Our remand to Appeals does not afford petitioner a second hearing in violation of sec. 6330(b)(2) but, rather, is a supplement to the initial hearing.  It provides the parties an opportunity to complete the initial hearing while preserving petitioner's right to receive judicial review of the supplemental or ultimate notice of determination.  See Wadleigh v. Commissioner, 134 T.C. 280, 299 (2010); Kelby v. Commissioner, 130 T.C. 79, 86 (2008).  Nor is our remand herein "tantamount to pressuring respondent and actively taking petitioners' side in the negotiations".  Cf. Kuretski v. Commissioner, T.C. Memo. 2012-262, at *11-*12, aff'd, 755 F.3d 929 (D.C. Cir. 2014).