T.C. Memo. 2020-57

UNITED STATES TAX COURT

MARTIN D. KIRKLEY AND SHEILA G. KIRKLEY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2928-17L.                    Filed May 13, 2020.

Joseph G. Shannonhouse IV, for petitioners.

William F. Castor and Vassiliki Economides Farrior, for respondent.

MEMORANDUM OPINION

COLVIN, Judge: Respondent issued a notice of determination to petitioners

sustaining respondent's lien notice and proposed levy notice. The issues for

decision are:

**[\*2]**  1.  Regarding respondent's determination to sustain the lien notice, whether petitioners timely requested a collection due process (CDP) hearing in response to their receipt of a lien notice and, if they did not, what effect this has on our jurisdiction in this case.

2.  Regarding respondent's determination to sustain the proposed levy notice, whether respondent's rejection of petitioners' proposed installment agreement on the grounds that they had not first sold almost all of their property, including their residence, was an abuse of discretion.  We hold that it was because it was based on the erroneous assumption that the Internal Revenue Manual (IRM) provides no discretion to respondent's agents to accept an installment agreement unless the taxpayer first sells all of his or her property.

We will remand this case to the Internal Revenue Service (IRS) Appeals Office to allow consideration of these issues.

This case was submitted fully stipulated without trial pursuant to Rule 122.[1]

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code in effect at all relevant times.  Rule references are to the Tax Court Rules of Practice and Procedure.  Monetary amounts are rounded to the nearest dollar.  Petitioners resided in Oklahoma when the petition was filed.

**[\*3]**                                    <u>Background</u>

A.     <u>Background</u>

Petitioners are husband and wife and are the sole owners of an

S corporation.  Petitioners had not paid and do not deny that they are liable for the

following amounts of Federal income tax, penalties, and interest as of April 18,

2018:

| Year | Deficiency | Interest | Addition to tax sec. 6651(a)(1) |
|------|-----------|----------|------------------------------|
| 2013 | $905,810  | $125,471 | $161,122 |
| 2014 | 2,291,066 | 231,679  | 460,534 |

On December 22, 2015, respondent issued to petitioners a Notice of Federal

Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (lien notice) for tax

years 2013 and 2014.  On January 22, 2016, respondent issued to petitioners a

Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing

(levy notice) for tax years 2013 and 2014.

B.     <u>The CDP Process</u>

1.     <u>Petitioners' Form 12153 and Form 433-A</u>

On February 8, 2016 (apparently 17 days after respondent issued the levy

notice and 48 days after he issued the lien notice), petitioners submitted a Form

12153, Request for a Collection Due Process or Equivalent Hearing, for the lien

[*4] notice and the levy notice. In their request petitioners inquired about entering an installment agreement and stated that they were attempting to borrow against their home equity. On February 18, 2016, petitioners sent a letter to an IRS revenue officer (RO) and attached a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, a Form 433-B, Collection Information Statement for Businesses, and six months of bank statements from their personal accounts. In those materials petitioners said they had been paying $47,558 per month in delinquent State or local taxes, which they would have repaid with one more payment.

2.    Installment Agreement

On June 8, 2016, the IRS settlement officer (SO) assigned to petitioners' case told petitioners that in order for her to consider an installment agreement they must complete a Form 9465, Installment Agreement Request, by June 23, 2016, and if their applications for a home equity loan were denied, they must submit copies of the loan applications and two loan denial letters. The SO also stated that if petitioners did not receive loan approval they would "be required to sell * * * [their] assets and pay over the equity before * * * [the parties could] enter into an installment agreement for the remaining unpaid balance."

[*5]  Petitioners sent a letter to the SO dated June 23, 2016, in which they submitted the Form 9465, one loan denial letter, and a Form 433-F, Collection Information Statement.  In that letter petitioners said that one loan application had been denied by phone and they were currently pursuing loans elsewhere.  On the Form 9465 petitioners proposed to pay $50,000 of their unpaid Federal tax per month.

On October 20, 2016, the SO recorded in her case activity record that she received an email from the RO who reviewed petitioners' case "stating that he had completed the financial investigation on * * * [petitioners] in April of 2016".  She recorded that the RO concluded petitioners' disposable income was $3,439[2] per month.  There are no entries in the case activity record after October 20, 2016.

Also on October 20, the SO sent petitioners a letter in which the SO reiterated that before she approves their proposed installment agreement, petitioners must provide copies of two loan applications and denial letters.  The SO stated that if petitioners could not obtain a loan they were "expected to sell all assets, with the exception of two vehicles, and provide evidence that these assets have been placed up for sale."  The letter listed a variety of assets petitioners

---

[2]The SO states petitioners' disposable income amount as either $3,439 or $3,438 in her subsequent communications with petitioners.  For simplicity we assume the amount is $3,439.

[*6] owned including their principal residence and real property used by the S corporation.

By letter dated November 21, 2016, petitioners told the SO that they had applied for a loan from a bank in Oklahoma City.

On December 6, 2016, the parties discussed an installment agreement in which petitioners volunteered to pay $50,000 per month and a lump sum from their equity in real estate and other property which they sold. Also on that day the SO sent petitioners a letter with a Form 433-D, Installment Agreement, and a Form 12257, Summary Notice of Determination, Waiver of Right to Judicial Review of a Collection Due Process Determination, Waiver of Suspension of Levy Action, and Waiver of Periods of Limitation in Section 6330(e)(1). The SO stated in the letter that she would recommend to her manager that the installment agreement be accepted if petitioners signed, dated, and returned the forms to her before December 20, 2016. The Form 433-D, which appears to have been filled out by the SO, stated that petitioners would pay a lump sum of $1,019,660 of their unpaid Federal tax from the sale of their assets by June 1, 2017, and $50,000 per month beginning on February 20, 2017.

On December 19, 2016, the SO received the Form 433-D signed by petitioners. Petitioners stated that they probably could make the lump-sum

**[*7]** payment by June 2017.  However, petitioners did not sign the Form 12257 because their counsel advised them not to waive their appeal rights.

On December 27, 2016, the SO sent a letter to petitioners stating that she could not accept the proposed installment agreement because:  (1) the IRM did not permit respondent to enter into an installment agreement before petitioners liquidated their assets and paid the proceeds to respondent, (2) petitioners could not pay $50,000 per month as shown by the RO's estimate that petitioners could pay only $3,438 per month, and (3) petitioners had "significant equity in assets that must <u>first be liquidated</u>."  She also stated that no collection alternative was available to petitioners and that a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 of the Internal Revenue Code (notice of determination) was going to be issued.

On January 11, 2017, respondent issued a notice of determination to petitioners rejecting the proposed installment agreement and sustaining the lien notice and the levy notice.  The notice of determination includes an attachment which appears to have been written by the SO.  The attachment states that petitioners' proposed installment agreement had been rejected "because * * * [petitioners'] equity is required to be paid over first."  It also states that petitioners--

[*8] have a monthly ability to pay only $3,439 per month. Since an installment agreement for this amount would not result in full payment of the taxes within the collections statute, liquidation of * * * [petitioners'] asset equity is mandatory in accordance with IRM 5.14.2.1.2(3), (4), (5) and (6). * * * [S]ince loans appear to be unattainable, then all assets with the exception of two of * * * [petitioners'] vehicles must be sold and the equity paid over <u>first</u>.

The attachment to the notice also states that after the SO sent the Form 433-D on December 6, 2016, the SO had "confirmed that IRM 5.14.1.4(5) requires that equity be paid over before entering into the agreement." Attached to the notice was a copy of the list of assets included in the October 20, 2016, letter, which included petitioners' principal residence and real property used by the S corporation.

<u>Discussion</u>

The issues for decision are: (1) regarding the lien notice, whether petitioners timely requested a CDP hearing and, if not, how that affects our jurisdiction in this case; and (2) regarding the levy notice, whether the determination that petitioners must liquidate all of their property, including their residence, as a condition for respondent's acceptance of an installment agreement, was an abuse of discretion.

**[*9]** A.    Standard of Review

Where, as here, the existence and amount of a taxpayer's underlying tax liability is not in dispute, we review the Commissioner's determination for abuse of discretion. Goza v. Commissioner, 114 T.C. 176, 182 (2000). An abuse of discretion occurs if the SO exercises his or her discretion "arbitrar[il]y, capricious[ly], or without sound basis in fact or law." Giamelli v. Commissioner, 129 T.C. 107, 111 (2007). If the SO follows all statutory and administrative guidelines and provides a reasoned, balanced decision, we will not reweigh the equities. Thompson v. Commissioner, 140 T.C. 173, 179 (2013).

B.    Lien Notice

According to our record, respondent issued the lien notice to petitioners on December 22, 2015, and petitioners submitted the CDP hearing request 48 days later on February 8, 2016. Section 6320(a)(3)(B) establishes a 30-day period during which a taxpayer may request a CDP hearing after the issuance of a lien notice. However, the parties stipulated that petitioners submitted a "timely Form 12153 * * * with respect to the CDP Levy Notice and CDP Lien Notice."

On remand the parties should consider whether the CDP hearing request was timely with respect to the lien notice and, if not, how that affects our jurisdiction in this case. See, e.g., Wilson v. Commissioner, 131 T.C. 47 (2008);

[*10] Craig v. Commissioner, 119 T.C. 252, 256-260 (2002); Kim v.

Commissioner, T.C. Memo. 2005-96.

C.     Petitioners' Request for an Installment Agreement

Petitioners' request for a CDP hearing regarding the levy notice was clearly timely. Thus, we will next decide whether respondent's determination to sustain the notice of levy was an abuse of discretion.

The notice of determination states that the SO rejected petitioners' proposed installment agreement because IRM pt. 5.14.1.4(5) and 5.14.2.1.2(3), (4), (5), and (6) (Sept. 19, 2014) requires that petitioners sell all of their assets before respondent will enter into an installment agreement. However, neither of those IRM provisions automatically mandates sale of all of a taxpayer's property as a precondition of entering into an installment agreement.

IRM pt. 5.14.1.4(5) states in pertinent part that the SO should "explore the possibility of liquidating or borrowing against * * * assets" when considering an installment agreement "unless * * * the asset is necessary for the production of income or the health and welfare of the family." The property listed to be sold in the October 20, 2016, letter from the SO and in the notice of determination includes property used by petitioners' S corporation and petitioners' principal residence. The record does not show whether the SO considered whether those

**[\*11]** properties were "asset[s] necessary for the production of income or the health and welfare of the family."

IRM pt. 5.14.2.1.2(3) states that when a taxpayer has equity in assets "the taxpayer will normally be required to make a good faith attempt to utilize equity before the Service [IRS] will approve a" partial payment installment agreement (i.e., a payment plan where the taxpayer pays less than the total outstanding liability). However, IRM pt. 5.14.2.1.2(5) states that when the taxpayer cannot "secure a loan or liquidate an asset following a good faith attempt to do so, the \* \* \* [SO] will need to make a seizure/levy determination". IRM pt. 5.14.2.1.2 does not require taxpayers to liquidate all of their assets; instead, it requires that the SO make a "levy determination". Making a levy determination is not the same thing as imposing a levy. Budish v. Commissioner, T.C. Memo. 2014-239, at \*19, \*22, \*25. Thus, IRM pt. 5.14.2.1.2 does not support the SO's conclusion that petitioners were required to liquidate all their assets before the IRS would accept an installment agreement.

In Budish v. Commissioner, at \*9, an Appeals officer (AO) concluded that the IRM required a lien notice to be filed before an installment agreement could be entered. The AO misinterpreted the cited IRM provision as shown by the fact that the cited provision provides discretion by stating that there may be occasions in

**[\*12]** which it is not necessary to file a lien notice. Id. at \*18-\*19. Similarly, the SO here interpreted the IRM not to allow the exercise of discretion in determining whether to accept the installment agreement without petitioners' first selling their residence and most of their other property. The IRM provisions the SO cited instruct IRS personnel to consider whether liquidating and borrowing against assets should be required. Neither provision states that petitioners must liquidate all of their assets before respondent will accept a proposed installment agreement.

Respondent contends that the SO did not abuse her discretion by listing petitioners' principal residence as an asset that they must liquidate. Respondent cites an example in IRM pt. 5.14.1.4(5) as support. That example states:

> If a taxpayer has the ability to pay $3,000 per month on a $200,000 liability and has a home valued at $400,000 with equity of $200,000, request that he attempt to borrow on the available equity in the home prior to granting an installment agreement. If the taxpayer does not attempt to borrow on the home he must be notified that, though the installment agreement request is pending, it will be recommended for rejection. If the taxpayer is able to get a home equity loan and the monies are used to pay taxes, the amount of the payment on the loan will be considered an allowable expense. However, if the taxpayer applies for a loan but the loan is not approved, every effort should be made to preserve the installment agreement. It would promote voluntary compliance and be in interest of the government.

This example does not support respondent's position. The final two quoted sentences state that it is in the Government's interest to make "every effort \* \* \* to

[*13] preserve the installment agreement" if the taxpayer cannot secure a home equity loan. IRM pt. 5.14.1.4(5) (including the cited example) does not state that to enter into an installment agreement taxpayers must sell their home if they cannot obtain a loan.

Section 6330(c)(3)(C) requires IRS personnel to consider "whether any proposed collection action [e.g., a levy] balances the need for the efficient collection of taxes with the legitimate concern * * * that any collection action be no more intrusive than necessary." In Budish v. Commissioner, at *24, the AO "gave little, if any, consideration to * * * [the taxpayer's] arguments and, instead, decided a notice of lien should be filed because of her mistaken belief that she lacked discretion to do otherwise under the IRM." In Budish the AO failed to properly balance the need for the efficient collection of the taxpayer's tax liability with the taxpayer's legitimate concern that the collection action be no more intrusive than necessary as required by section 6330(c)(3)(C). Having not performed the required analysis under section 6330(c)(3)(C), the AO committed an abuse of discretion. Id. That analysis also applies here.

In this case IRM pt. 5.14.1.4(5) and 5.14.2.1.2(3), (4), (5), and (6) provided discretion to determine whether petitioners must liquidate all their assets. The case activity record, where the SO recorded her notes on this case, contains no

[*14] entries after October 20, 2016, even though there was extensive communication between the parties after this date. Therefore, the case activity record provides no insight as to why the SO concluded that the IRM provided her with no discretion.

The record does not show that the SO balanced the need to collect tax with the legitimate concern that the collection action be no more intrusive than necessary. See sec. 6330(c)(3)(C). By failing to perform that analysis, the SO abused her discretion by rejecting the Form 433-D installment agreement and by issuing the notice of determination.

D. Conclusion

We will remand this case to the IRS Appeals Office for a supplemental hearing regarding the lien and levy notice in accordance with this opinion and for the issuance of a supplemental notice. We also note that the record does not resolve petitioners' claim that they can pay $50,000 per month and the RO's estimate that they can afford to pay only $3,438 per month. The parties should attempt to resolve this factual issue on remand and consider any other issue properly bearing on petitioners' eligibility for an installment agreement.

[*15]  To reflect the foregoing,

An appropriate order will be issued.