RENALD EICHLER, PETITIONER $v$. COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT

Docket No. 725–12L.          Filed July 23, 2014.

After R assessed trust fund recovery penalties against him,
P requested a partial pay installment agreement. Before P's
request had been input into the IRS computer system or acted
upon, R sent P Letters CP 90, Final Notice—Notice of Intent
to Levy and Notice of Your Right to a Hearing. P timely
requested a collection due process (CDP) hearing, renewing
his request for an installment agreement and asserting that
the Letters CP 90 should be withdrawn as invalid pursuant

to I.R.C. sec. 6331(k)(2), which prohibits the IRS from making a levy while an offer for an installment agreement is pending. During the CDP hearing R's settlement officer conditioned acceptance of an installment agreement on P's making an $8,520 downpayment. P declined this proposal as resulting in economic hardship. R's final determination sustained the proposed levy on the ground that P had declined R's proposed installment agreement; it rejected P's request that the Letters CP 90 be withdrawn as invalid. *Held*: I.R.C. sec. 6331(k)(2) did not preclude R from issuing the Letters CP 90 after P submitted his offer for an installment agreement. *Held*, *further*, R's determination not to rescind the Letters CP 90 was not an abuse of discretion under relevant provisions of the Internal Revenue Manual. *Held*, *further*, because the record does not allow for meaningful review of R's determination regarding the appropriateness of the $8,520 downpayment as a condition of an installment agreement, this case will be remanded for further proceedings.

*Mark Harrington Westlake*, for petitioner.
*John R. Bampfield*, for respondent.

### OPINION

THORNTON, *Chief Judge*: Petitioner seeks review pursuant to section 6330(d) of respondent's determination sustaining a proposed levy.[1] This case is before us on the parties' cross-motions for summary judgment.

### *Background*

The record reveals or the parties do not dispute the following.

When he filed his petition, petitioner lived in Tennessee. On December 20, 2010, respondent assessed against him these section 6672 trust fund recovery penalties: $89,760 for the fourth quarter of 2008, $82,725 for the first quarter of 2009, and $16,889 for the second quarter of 2009.

By letter dated April 11, 2011, petitioner's representative, Mark Harrington Westlake, sent to the Internal Revenue Service's (IRS) Service Center in Atlanta, Georgia, a letter requesting, among other things, a "partial payment install-

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

ment agreement" of $350 per month for the three quarters previously mentioned as well as the fourth quarter of 2007. This letter was accompanied by a completed and signed Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and supporting financial documentation.

On April 28, 2011, respondent received petitioner's request.[2] Pursuant to Internal Revenue Manual (IRM) pt. 5.14.1.3 (Mar. 4, 2011), the IRS Collection Division is required to input certain codes—"TC 971 AC 043" for installment agreement requests not immediately approved and "TC 971 AC 063" for requests immediately approved—into the IRS computer system within 24 hours of receiving an installment agreement request if it meets certain requirements. Although petitioner's request met these requirements, the IRS Collection Division failed to input any code until June 6, 2011, when the "TC 971 AC 043" code was input.

In the meantime, on May 9, 2011, respondent had sent to petitioner three Letters CP 90, Final Notice—Notice of Intent to Levy and Notice of Your Right to a Hearing (notices of intent to levy), with respect to petitioner's unpaid trust fund recovery penalties for the last quarter of 2008 and first two quarters of 2009.[3]

On May 13, 2011, the IRS Service Center in Atlanta, Georgia, sent petitioner a letter in response to the installment agreement request, stating:

> We have not resolved this matter because we haven't completed all the processing necessary for a complete response. However, we will contact you again within 45 days with our reply. You don't need to do anything further now on this matter.
>
> \*    \*    \*    \*    \*    \*    \*
>
> We've delayed sending you further notices while we research this matter. If you receive or have received additional notices \* \* \*, please contact us.

---

[2] The record does not show why petitioner's April 11, 2011, letter took 17 days to reach respondent.

[3] The notices of intent to levy referenced Publication 594, The IRS Collection Process. Publication 594 explains, among other things, that the IRS is prohibited from levying against a taxpayer's property while an installment agreement request "is being considered".

This May 13, 2011, letter erroneously stated that it was in reference to petitioner's 2008 Federal income tax rather than the trust fund recovery penalties at issue in this case.

On June 1, 2011, the Office of Appeals (Appeals) received a timely Form 12153, Request for a Collection Due Process or Equivalent Hearing, from petitioner indicating the following reason for his request:

> I previously submitted Form 433–A with supporting documentation and a request for an installment agreement. (Copy attached) The Final Notice (CP 90) was issued prematurely. I request that the Final Notice be withdrawn and that the installment payment agreement I requested be implemented. In the alternative I REQUEST AN IN PERSON HEARING IN NASHVILLE, TN.

By cover letter accompanying the Form 12153 petitioner asserted that the notices of intent to levy should be withdrawn pursuant to section 6331(k) and IRM pt. 5.11.1.2.2.8 (Jan. 1, 2006).

On September 1, 2011, an IRS settlement officer, Suzanne Magee (SO Magee), notified petitioner that she was in receipt of his request for an Appeals hearing and that she had scheduled an in-person conference for October 4, 2011.

On September 26, 2011, Mr. Westlake sent SO Magee a letter asserting that petitioner's installment agreement request had been submitted and was pending when the notices of intent to levy had been issued. Mr. Westlake requested that the notices be rescinded. He also stated:

> Please note that since the prior Form 433–A was submitted the taxpayers have become obligated for two additional court ordered payments on judgments. Moreover, they continue to receive dunning notices from many of the unsecured creditors shown on the exhibit to the Form 433–A. I am hopeful that my correspondence to those creditors will persuade them that filing further lawsuits will be futile.
>
> Dr. Renald Eichler is 76 years of age and Dr. Priscilla Eichler is 71 years of age.
>
> They have lived in their home since 1971. The current indebtedness against the home, i.e., $720,000 was incurred in an effort to prop up the non-profit educational corporation for which both of them worked. Those efforts were unsuccessful. The non-profit corporation itself lost its assets in foreclosure. I believe that it may have attempted a reorganization before it closed.
>
> We had originally requested a partial payment installment agreement in the amount of $350 per month. However, the taxpayers' financial situa-

tion has deteriorated and accordingly, we are now requesting that the accounts be designated "Currently Not Collectible."

Mr. Westlake also submitted with the letter a completed Form 433–A and supporting financial documentation. The Form 433–A reflected total gross monthly income of $5,464, of which $3,079 was attributable to petitioner and $2,385 was attributable to his wife.[4] The Form 433–A reported monthly expenses of $5,573, including the following:

| Expense | Amount |
| --- | --- |
| Food, clothing, & misc. | $985 |
| Housing and utilities | 3,500 |
| Vehicle operating costs | 488 |
| Health insurance—Humana | 112 |
| Out-of-pocket healthcare costs | 288 |
| Court-ordered payments | 200 |
| Taxes (income and FICA) | 212 |

The Form 433–A also reported debts of approximately $260,000 "on credit cards and store accounts and judgments."

On October 4, 2011, SO Magee conducted an in-person conference with petitioner, petitioner's wife, and Mr. Westlake. At the hearing Mr. Westlake once again argued that the notices of intent to levy had been issued prematurely because petitioner had submitted an installment agreement offer that was pending when the notices were issued. SO Magee determined that the issuance of the notices of intent to levy was not premature and that these notices should not be rescinded. After discussing potential collection alternatives, SO Magee requested additional supporting documentation.

On October 17, 2011, petitioner provided the requested supporting documentation to SO Magee. By cover letter Mr. Westlake renewed his objection that the notices of intent to levy had been issued prematurely and that they should be rescinded. He also requested a $25-per-month installment agreement as a collection alternative to the proposed levy.

On October 19, 2011, after reviewing petitioner's documentation, SO Magee phoned Mr. Westlake and left him a voicemail message, requesting certain bank statements to substantiate some of petitioner's expenses and indicating that the notices of intent to levy would not be rescinded.

_____

[4] Petitioner's wife is not a party to this proceeding.

On October 26, 2012, Mr. Westlake provided the requested bank statements to SO Magee. A joint bank account petitioner shared with his wife showed a balance of $15,214 as of October 20, 2011. Mr. Westlake again renewed his request for a $25-per-month installment agreement and rescission of the notices of intent to levy.

SO Magee reviewed petitioner's Form 433–A and supporting financial documentation. She concluded that an appropriate collection alternative would be an installment agreement of $25 per month for one year increasing to $734 per month in November 2012, provided that petitioner also submitted with his installment agreement a downpayment of $8,520.

On October 28, 2011, SO Magee called Mr. Westlake to confirm receipt of the additional financial documentation. She also communicated to Mr. Westlake her proposed installment agreement collection alternative to the proposed levy.

By letter dated November 8, 2011, Mr. Westlake agreed to SO Magee's proposal that petitioner pay $25 per month, increasing to $734 per month in November 2012. He disagreed, however, that petitioner should be required to make an $8,520 downpayment, stating: "Please refer to my prior correspondence explaining that $15,000 had originally been borrowed from family members. I have since confirmed that the funds were loaned to Mrs. Eichler by her sister. Repayment of that loan would fully deplete the savings account." He also indicated that if SO Magee was "unable or unwilling to accept the proposed $25 per month installment agreement with an automatic twelve month increase, but without the initial $8,520 payment and with the rescission of the [notices of intent to levy] * * *, please issue your final determination".

On December 8, 2011, Appeals issued to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice). In the notice Appeals sustained the proposed levy. The notice stated that "under current procedures" the notice of intent to levy "is deemed valid and will not be rescinded even when there is a pending installment agreement." The notice also stated: "Based on the financial information provided during the hearing process Appeals determined the appropriate collection resolution to be an installment agreement with down payment of $8,520

then $25 per month for 12 months to increase to $734 per month thereafter. The down payment is your percentage share of a joint savings account with your wife."

## *Discussion*

### A. *Summary Judgment Standard*

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). Summary judgment may be granted where there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b). The moving party bears the burden of showing that there is no genuine dispute as to any material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. *See id.*; *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

### B. *Statutory Framework*

Section 6331(a) provides that if any person liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand for payment, then the Secretary is authorized to collect such tax by levy upon that person's property. Section 6330(a) requires the Secretary to send written notice to the person of that person's right to request an Appeals hearing before a levy is made. If an Appeals hearing is requested, the Appeals officer must, at the hearing, verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(b)(1), (c)(1). Section 6330(c)(2) prescribes the matters that a person may raise at the Appeals hearing, including spousal defenses, challenges to the appropriateness of the Commissioner's intended collection action, and possible alternative means of collection, including offers-in-compromise (OIC) and installment agreements. The existence or amount of the underlying tax liability may also be contested, but only if the person did not receive a notice of deficiency or did not otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B); *see also Sego v. Commissioner*, 114 T.C. 604, 609 (2000).

C. *Standard of Review*

Petitioner has not challenged his underlying tax liabilities. We review respondent's determination for abuse of discretion, asking whether it was arbitrary, capricious, or without sound basis in fact or law. *See, e.g.*, *Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006); *Sego v. Commissioner*, 114 T.C. at 610.

D. *Whether Respondent's Determination Not To Rescind the Notices of Intent To Levy Was an Abuse of Discretion*

Petitioner argues that respondent abused his discretion in refusing to rescind the notices of intent to levy. He argues that section 6331(k)(2) precludes the IRS from issuing a notice of intent to levy while an installment agreement offer is pending.

Although section 6331(a) grants the Secretary authority to levy upon a taxpayer's property or rights to property, various subsections of section 6331 prohibit the Secretary from levying under certain circumstances. *See* sec. 6331(f), (g), (i), (j), (k). Section 6331(k)(2) provides:

> (2) INSTALLMENT AGREEMENTS.—No levy may be made under subsection (a) on the property or rights to property of any person with respect to any unpaid tax—
>
>> (A) during the period that an offer by such person for an installment agreement under section 6159 for payment of such unpaid tax is pending with the Secretary; and
>> (B) if such offer is rejected by the Secretary, during the 30 days thereafter (and, if an appeal of such rejection is filed within such 30 days, during the period that such appeal is pending) * * *

By its terms this statute bars the IRS, while a taxpayer's offer for an agreement request is pending, from making a levy; it does not bar the IRS from issuing notices of intent to levy. [5] *Accord United States v. Austin*, No. 09–10405–RWZ,

---

[5] The notice of determination does not expressly reflect any determination as to whether petitioner's installment agreement offer was in fact "pending" when the IRS issued the notices of intent to levy. Rather, the notice of determination proceeds upon the premise that a notice of intent to levy is valid and will not be rescinded "even when there is a pending installment agreement." In this proceeding respondent argues for the first time that the installment agreement was not pending when the notices of intent were issued. In support of this argument, respondent points to the May 13, 2011, letter from the IRS Service Center in Atlanta which stated

Continued

2010 WL 1711294, at *3 n.2 (D. Mass. Apr. 26, 2010), *aff'd*, 526 Fed. Appx. 2 (1st Cir. 2013); *Politte v. United States*, No. 07CV1950 JLS (CAB), 2009 WL 3166924, at *5 (S.D. Cal. Aug. 6, 2009); *see also Living Care Alts. of Utica, Inc. v. United States*, 411 F.3d 621, 629 (6th Cir. 2005) (holding that section 6331(f) and (j), which provides, similarly to section 6331(k), that "no levy may be made" before the IRS has taken certain actions, do not bar the IRS from issuing notices of intent to levy before taking these actions); *Medlock v. United States*, 325 F. Supp. 2d 1064, 1079 (C.D. Cal. 2003) (same). [6] The regulations expressly provide that while levy is prohibited "[t]he IRS may take actions other than levy to protect the interests of the Government". Sec. 301.6331–4(b)(1), Proced. & Admin. Regs. A notice of intent to levy is an action other than a levy to protect the interests of the Government; unlike a levy, it is merely preliminary to a collection action, rather than a collection action barred by section 6331(k)(2). *See Politte*, 2009 WL 3166924, at *5.

that "we haven't completed all the processing necessary for a complete response". It is unclear from the record to what extent this delay in processing petitioner's installment agreement offer was attributable to the IRS' failure to input the offer into its computer system until June 6, 2011. In any event, because we decide the issue of the effect of sec. 6331(k)(2) in respondent's favor even if we assume, as apparently did Appeals, that petitioner's offer was pending when the IRS issued the notices of intent to levy, it is unnecessary to consider respondent's argument raised for the first time in this proceeding. *Cf. Antioco v. Commissioner*, T.C. Memo. 2013–35 (declining to uphold a notice of determination on grounds other than those relied upon in the notice (citing *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), and *SEC v. Chenery Corp.*, 318 U.S. 80 (1943))); *Jones v. Commissioner*, T.C. Memo. 2012–274 (same); *Salahuddin v. Commissioner*, T.C. Memo. 2012–141 (same).

[6] We are mindful that in *Tucker v. Commissioner*, T.C. Memo. 2011–67 (upholding Appeals' rejection of an OIC), *aff'd*, 676 F.3d 1129 (D.C. Cir. 2012), in the "Background" section of the opinion, a footnote indicated that the IRS had withdrawn a notice of intent to levy that it had issued after the taxpayer had submitted an OIC. By way of explanation, the footnote stated: "Section 6331(k)(1) provides for a restraint on levy while an OIC is pending, and the issuance of the notice of levy violated that restriction." *Id.*, slip op. at 8 n.6. This dictum, however, did not represent a holding or a predicate to any holding in *Tucker*, as made explicit in the same footnote: "The issuance of that first levy notice (and its subsequent withdrawal) was not part of the CDP hearing or determination and is not part of the CDP appeal at issue here." *Id.* Accordingly, the dictum in *Tucker* concerning sec. 6331(k)(1) does not control this case.

Accordingly, under the regulations, consistent with the plain language of the statute, the IRS was not prohibited from issuing the notices of intent to levy after petitioner submitted his offer for an installment agreement.

Petitioner also argues that respondent should have rescinded the notices of intent to levy pursuant to IRM pt. 5.11.1.2.2.8 and IRM pt. 5.14.1.3. In the first instance we observe that provisions of the IRM do not carry the force and effect of law or confer rights on taxpayers. *See, e.g, Fargo v. Commissioner*, 447 F.3d 706, 713 (9th Cir. 2006), *aff'g* T.C. Memo. 2004–13. In any event, we conclude that respondent did not abuse his discretion in applying these provisions.

IRM pt. 5.11.1.2.2.8 appears in the part of the IRM that provides information and guidance to revenue officers in the collection process. It directs the IRS Collection Division to rescind notices of intent to levy in certain circumstances, one of which is when a notice of intent to levy is issued while levy action is prohibited and the taxpayer timely requests an Appeals hearing. By contrast, IRM pt. 8.22.2.2.2.2(5) (Dec. 14, 2010) states that Appeals should not rescind a notice of intent to levy that was issued during the pendency of an installment agreement, even where levy is prohibited. Petitioner argues that these two provisions are inconsistent and that we should treat IRM pt. 5.11.1.2.2.8 as controlling. We disagree. The IRM is not necessarily inconsistent in directing the Collection Division and Appeals to take different actions. SO Magee did not abuse her discretion in following the IRM provisions directed to and applicable to Appeals, of which she was a part.

In sum, we hold that respondent did not abuse his discretion in declining to rescind the notices of intent to levy.

E. *Respondent's Determination Requiring Petitioner To Make an $8,520 Downpayment as a Condition of His Installment Agreement*

Petitioner also argues that respondent abused his discretion in determining that petitioner should make an $8,520 downpayment as a condition of his installment agreement.[7]

---

[7] Petitioner does not take issue with SO Magee's determination requiring installment payments of $25 per month for one year followed by payments

Continued

Petitioner argues that having to make the $8,520 down payment would cause economic hardship for him and his wife.

Section 6159 authorizes the Secretary to enter into an installment agreement upon determining that the proposed installment agreement would facilitate full or partial collection of the tax liability. Recognizing that the Secretary has the discretion to accept or reject any proposed installment agreement, *see* sec. 301.6159–1(c)(1)(i), Proced. & Admin. Regs., the Court gives due deference to the Secretary's determination, *see Marascalco v. Commissioner*, T.C. Memo. 2010–130, *aff'd*, 420 Fed. Appx. 423 (5th Cir. 2011).

The IRM describes procedures the IRS uses in determining whether a proposed installment agreement facilitates the collection of an unpaid tax liability. These procedures require taxpayers to liquidate assets in order to qualify for an installment agreement in the absence of special circumstances such as old age, ill health, or economic hardship. *See* IRM pt. 5.14.1.4(5) and (6) (June 1, 2010).

During petitioner's Appeals hearing Mr. Westlake asserted repeatedly that petitioner and his wife were elderly and had limited financial resources and that making the $8,520 downpayment would pose an undue economic hardship for them. Additionally, Mr. Westlake asserted that the funds in the joint bank account did not actually belong to petitioner. We find no indication in the record that SO Magee expressly considered these issues.

Because the record does not allow for meaningful review in this regard, and there is a genuine dispute of material fact, we will deny the parties' cross-motions for summary judgment and remand this case for Appeals to clarify the basis for SO Magee's determination with regard to the appropriateness of requiring the disputed downpayment in the light of the concerns petitioner raised. *See Hoyle v. Commissioner*, 131 T.C. 197, 204–205 (2008). Upon remand Appeals shall consider any new collection alternative that petitioner may wish to propose, taking into account any changed circumstances and other relevant factors.

--------

of $734 per month thereafter.

To reflect the foregoing,

*An appropriate order will be issued.*