T.C. Memo. 2019-157

UNITED STATES TAX COURT

MARTIN WASHINGTON BROWN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8999-17L.                          Filed December 9, 2019.

Martin Washington Brown, pro se.

<u>Shari A. Salu</u>, <u>Ryan Z. Sarazin</u>, and <u>Bartholomew Cirenza</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case petitioner seeks

review pursuant to sections 6320(c) and 6330(d)(1)[1] of the determination by the

Internal Revenue Service (IRS or respondent) to uphold the filing of a notice of

_____

[1] All statutory references are to the Internal Revenue Code in effect at all
relevant times.  We round all monetary amounts to the nearest dollar.

[*2] Federal tax lien (NFTL). Petitioner contends that the settlement officers abused their discretion in declining to withdraw the NFTL. Finding no abuse of discretion in any respect, we will sustain the collection action.

FINDINGS OF FACT

The parties submitted stipulations of fact with attached exhibits that are incorporated by this reference. Petitioner resided in Virginia when he filed his petition.

Petitioner filed Federal income tax returns for 2007, 2010, 2011, 2012, and 2014 (years in question) but failed to pay the full amounts of tax shown as due on those returns. The IRS assessed the tax plus interest and additions to tax for failure to pay. As of September 2016, petitioner's outstanding liabilities for the five years in question totaled $18,533. He also had outstanding liabilities for 2006 and 2015, bringing his aggregate unpaid Federal income tax liability to $35,436.

In an effort to address these unpaid liabilities petitioner sought an installment agreement. In September 2016 the IRS enrolled him in a partial payment installment agreement (PPIA) calling for payments of $300 per month. But the IRS determined that the filing of an NFTL was necessary because petitioner's unpaid balance of assessments exceeded $10,000. See Internal Revenue Manual

**[\*3]** (IRM) pt. 5.12.2.6(1) (Oct. 14, 2013). The IRS accordingly filed an NFTL covering the five years in question.

On October 4, 2016, the IRS sent petitioner a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing. Petitioner thereafter spoke with an official at the IRS Automated Collection Services (ACS) and represented that he would lose his job if the IRS did not withdraw the NFTL. The ACS official had no authority to withdraw the NFTL, but on the basis of petitioner's representation she said that she would recommend withdrawal. Petitioner subsequently received from the IRS a blank Form 12277, Application for Withdrawal of Filed Form 668(Y), Notice of Federal Tax Lien.

Petitioner timely requested a CDP hearing. He contended that the NFTL was "filed prematurely and not in accordance with IRS procedures," representing that he had been told by a manager that she would recommend NFTL withdrawal. He stated that if the NFTL were not withdrawn his employment would be in jeopardy. But he did not submit a completed Form 12277 or supply any evidence that his job tenure was actually imperiled by the NFTL filing.[2]

---

[2]It appears that petitioner eventually submitted a completed Form 12277 on July 6, 2017, four months after the IRS issued the notice of determination.

**[*4]** Petitioner's case was assigned to a settlement officer (SO1) from the IRS Appeals Office in Fresno, California. SO1 reviewed petitioner's account transcripts and verified that his tax liabilities had been properly assessed and that all other requirements of law and administrative procedure had been met. On February 2, 2017, SO1 acknowledged receipt of petitioner's hearing request and scheduled a telephone CDP hearing for March 15, 2017. SO1 advised him that "to qualify for lien withdrawal * * * [the] total balance due need[s] to be paid in 60 months." The letter explained that these payments would have to be made pursuant to a Direct Debit Installment Agreement (DDIA) and that, once three consecutive payments had been successfully processed, he could file a Form 12277 to request NFTL withdrawal.

The telephone conference was held as scheduled. SO1 explained that the NFTL was warranted to protect the Government's interest because of the magnitude of petitioner's outstanding tax liabilities. SO1 informed him that the IRS might withdraw the NFTL if he (1) converted his PPIA into a DDIA, (2) agreed to pay a monthly amount that would satisfy his total liability within 60 months, and (3) made three consecutive payments under the DDIA. See IRM pt. 5.12.9.3.2.1 (Oct. 14, 2013).

**[*5]** On January 23, 2017, a payment of $11,666 was applied against petitioner's 2006 liability, reducing his aggregate outstanding liability by about one-third. After performing the necessary calculations, SO1 informed petitioner that, to qualify for NFTL withdrawal, he would need to convert his PPIA into a DDIA and increase his monthly payment from $300 to $508. Petitioner declined to modify his monthly payment and said he would pursue his remedies in court. On March 23, 2017, the Appeals Office issued petitioner a notice of determination sustaining the NFTL filing.

Petitioner timely sought review in this Court, and respondent filed a motion for summary judgment. During oral argument on that motion petitioner stated that he had paid the IRS approximately $11,000 in January 2017. On the record before the Court at the time, it was unclear whether SO1 had accounted for that credit to petitioner's 2006 account when calculating his required minimum monthly payment. This Court accordingly denied the motion for summary judgment and remanded the case for a supplemental CDP hearing.

On July 11, 2018, petitioner's case was reassigned to a new settlement officer (SO2) from the Appeals Office in Washington, D.C. SO2 reviewed petitioner's account transcript and confirmed the $11,666 payment that he had made on January 23, 2017. SO2 concluded that SO1's computations had taken account of

**[\*6]** this payment: As a result of the $11,666 payment, petitioner's required monthly payment was reduced to $508 (the amount SO1 ultimately calculated) from $830 (the amount SO1 had initially calculated without regard to the $11,666 payment). SO2 performed a new analysis (assuming that payments would begin on July 28, 2018) and determined that monthly payments of $506 would be necessary to discharge petitioner's aggregate outstanding liabilities within 60 months.[3]

SO2 scheduled a telephone conference for August 17, 2018, and requested that petitioner submit documentation supporting his assertion that the NFTL filing jeopardized his employment. Petitioner supplied no documentation to SO2 before the conference.

The conference was held as scheduled. SO2 explained that petitioner would need to raise his monthly payments to $506 and execute a DDIA in order to qualify for withdrawal of the NFTL. Petitioner declined to do so, insisting that he had spoken with an IRS official who indicated that the NFTL would be withdrawn. SO2 explained that petitioner's communication had been with an ACS manager,

---

[3]At that point petitioner's total unpaid balance was $26,457. SO2 calculated the $506 payment by adding to his unpaid balance the amount of interest that would accrue during the ensuing five years. See Internal Revenue Manual pt. 5.14.1.1(1) (Jan. 1, 2016) ("During the course of [installment] agreements, penalties and interest continue to accrue.").

**[*7]** who lacked authority to withdraw the NFTL but could only recommend withdrawal. SO2 offered petitioner more time to substantiate his assertion that his employment was in jeopardy. Petitioner declined this invitation and told SO2 that he would see him in court.

SO2 concluded that the NFTL was necessary to protect the Government's interest and that petitioner did not otherwise qualify for withdrawal. On December 19, 2018, the Appeals Office issued a supplemental notice of determination sustaining the NFTL filing. Trial was held on April 15, 2019, and petitioner and SO2 both testified. Petitioner testified that he has worked for the same employer since 2012 and became executive director of that company in 2018. We directed the parties to file simultaneous post-trial briefs by September 6, 2019. Respondent timely filed his brief; petitioner did not file a brief.

OPINION

A.    Standard of Review

Neither section 6320(c) nor section 6330(d)(1) prescribes the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our

[*8] precedents. Where (as here) the underlying tax liability is not at issue,[4] the Court reviews the IRS decision for abuse of discretion. Goza v. Commissioner, 114 T.C. 176, 182 (2000). Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

B.     Analysis

Petitioner contends that the Appeals Office abused its discretion in sustaining the NFTL filing. We review the record to determine whether the SOs: (1) properly verified that the requirements of applicable law or administrative procedure had been met, (2) considered any relevant issues petitioner raised, and (3) considered whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3). Our review of the record establishes that the SOs properly discharged all of their responsibilities.

Section 6323(j) authorizes withdrawal of an NFTL filing if (1) "the filing of such notice was premature or otherwise not in accordance with administrative pro-

_____

[4]Petitioner did not dispute his underlying liabilities during the CDP hearing or in his petition. At trial he confirmed that he was not disputing his underlying liabilities for the five years in question.

[*9] cedures," (2) the taxpayer has entered into an installment agreement that renders the NFTL unnecessary, (3) withdrawal of the NFTL "will facilitate the collection of the tax liability," or (4) withdrawal of the NFTL "would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States."

SO2 correctly determined that the NFTL was not premature and had been filed consistently with IRS procedures, so the first ground for withdrawal has no application here. The fourth ground is likewise inapplicable. Petitioner urges the second and third grounds for withdrawal; he also contends that the IRS should be estopped from maintaining the NFTL because of representations that were allegedly made to him. We address these arguments in turn.

1. Execution of Installment Agreement

The IRM provides for NFTL withdrawal, under limited circumstances, where a taxpayer has executed an installment agreement. See IRM pt. 5.12.9.3 (Oct. 14, 2013). Among other requirements are that the taxpayer: (1) have a DDIA (or convert an existing installment agreement into a DDIA), (2) agree to make payments that will fully satisfy his outstanding tax liabilities within 60 months (or before the expiration of the collection period of limitations, if earlier),

**[\*10]** and (3) make at least three consecutive payments under the DDIA.  See IRM

pt. 5.12.9.3.2.1(3), (4), (5), (8) (Oct. 14, 2013).

In 2016 petitioner entered into a PPIA calling for monthly payments of

$300.  Despite invitations from both SOs, petitioner declined to convert his PPIA

into a DDIA.  For that reason alone he did not qualify for NFTL withdrawal.  See

IRM pt. 5.12.9.3.2.1(10) ("Taxpayers making payments under any other type of

installment agreement are not eligible for consideration for withdrawal * * *

unless they convert to a DDIA").

Even if petitioner had converted his PPIA into a DDIA, monthly payments

of $300 would not have satisfied his unpaid balance within 60 months.  Both SOs

offered petitioner the opportunity to increase his monthly payment to the required

amount (approximately $500), but he declined.  For that reason as well he did not

qualify for NFTL withdrawal.

An SO does not abuse his discretion when he adheres to collection guide-

lines published in the IRM.  See Eichler v. Commissioner, 143 T.C. 30, 39 (2014)

(finding no abuse of discretion where SO followed IRM guidelines in declining to

rescind notices of intent to levy); Moriarty v. Commissioner, T.C. Memo. 2017-

204 (finding no abuse of discretion where SO followed IRM guidelines in declin-

[*11] ing to withdraw or subordinate a tax lien), aff'd per order, 2018 WL 4924349 (6th Cir. Sept. 19, 2018); Akonji v. Commissioner, T.C. Memo. 2012-56 (same).

Even if petitioner could show that he was eligible for withdrawal, section 6323(j) "is permissive, and nothing in it requires respondent to withdraw the NFTL because of * * * [an] installment agreement." Berkery v. Commissioner, T.C. Memo. 2011-57, 101 T.C.M. (CCH) 1258, 1260; see sec. 301.6323(j)-1(c), Proced. & Admin. Regs. ("If the Commissioner determines conditions for withdrawal [of an NFTL] are present, the Commissioner may (but is not required to) authorize the withdrawal."). The SOs did not abuse their discretion in declining to withdraw the NFTL filing.

2.    Facilitating Collection of Tax

The IRS may withdraw an NFTL if that action will facilitate collection of the tax. See sec. 6323(j)(1)(C). Withdrawal may facilitate collection where the taxpayer demonstrates that the existence of the NFTL impairs his ability to hold a job and earn income. But the taxpayer must provide to the Appeals Office documentation that the NFTL affects his employment prospects. See Klika v. Commissioner, T.C. Memo. 2012-225, 104 T.C.M. (CCH) 153, 155 (finding that a taxpayer's "bare assertion" that a lien impaired his ability to obtain employment

[*12] was "insufficient to establish that lien withdrawal would facilitate collection"). When a taxpayer fails to present such evidence to the Appeals Office, he is precluded from raising the argument in this Court. LG Kendrick, LLC v. Commissioner, 146 T.C. 17, 39 (2016), aff'd, 684 F. App'x 744 (10th Cir. 2017); sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

Petitioner failed to show that withdrawal of the NFTL would facilitate collection. He submitted no evidence to SO1 or SO2 supporting his assertion that the NFTL filing could cause him to lose his job or interfere with future gainful employment. Because he did not properly raise this issue before the Appeals Office, he is foreclosed from advancing it in this Court. See LG Kendrick, LLC, 146 T.C. at 39. In any event, petitioner testified at trial that he has worked for the same employer since 2012 and became executive director (apparently a promotion) in 2018, well after the IRS filed the NFTL. SO2 did not abuse his discretion in determining that withdrawal would not facilitate collection.

3.    Estoppel

Petitioner finally argues that the doctrine of equitable estoppel compels respondent to withdraw the NFTL. Petitioner asserts that IRS employees told him, during 2016, that the IRS would not file an NFTL if he entered into an installment agreement and/or that the NFTL would be withdrawn. He appears to contend that

[*13] he would not have entered into the PPIA had he known that an NFTL would be filed.

"Although the doctrines of estoppel and quasi-estoppel are applicable against the Commissioner, it is well established that these doctrines should be applied against him with utmost caution and restraint." Estate of Emerson v. Commissioner, 67 T.C. 612, 617 (1977). A taxpayer claiming the benefits of estoppel must establish (among other things) that there was a false representation (or misleading silence) and that he was adversely affected as a result. Id. at 617-618. The burden of proof rests with the taxpayer claiming estoppel. See Estate of Bennett v. Commissioner, 935 F.2d 1285, 1991 WL 107735, at *2 (4th Cir. 1991) (describing the burden of proof as "heavy"), aff'g without published opinion T.C. Memo. 1989-681.

Petitioner's estoppel argument is unpersuasive. The record reflects that he spoke with two IRS employees, one before the NFTL filing and one after. He asserts that the first employee promised that an NFTL would not be filed if he entered into an installment agreement. But such a promise would violate established IRS policy, and there is no credible evidence to support petitioner's assertion that any such promise was made.

**[\*14]** The second employee with whom petitioner spoke--the ACS manager--stated only that she would <u>recommend</u> that the NFTL be withdrawn. She offered to do so on the basis of petitioner's representation that he would lose his job--a representation that he has never substantiated. As both SOs explained to petitioner, the ACS manager had no authority actually to withdraw the NFTL. We find no misrepresentation of any fact by any IRS officer that could give rise to a cognizable estoppel claim.

Even if we were to assume that misinformation was given, petitioner failed to meet his heavy burden to demonstrate that he was adversely affected. There is no evidence that he suffered any detriment--financial or otherwise--by entering into the PPIA under the supposed misapprehension that no NFTL would be filed. He has not shown that the NFTL filing damaged his employment prospects in any way. And it appears that he actually benefited from the PPIA because it forestalled immediate IRS collection action in the form of a levy or garnishment. We find that petitioner suffered no detriment by entering into the installment agreement.

In sum, we find that the SOs did not abuse their discretion in any respect, and we further conclude that the doctrine of estoppel has no application here. We will accordingly sustain the NFTL filing and the SOs' decisions not to withdraw it.

[*15]  To implement the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.