# United States Tax Court

T.C. Memo. 2023-138

GEORGE E. KOSMIDES,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 15941-17L.                          Filed November 16, 2023.

————

*Stephen P. Kauffman* and *Terry L. Goddard, Jr.*, for petitioner.

*David A. Indek*, for respondent.

## MEMORANDUM OPINION

PUGH, *Judge*: In this collection case petitioner seeks review pursuant to sections 6320(c)[1] and 6330(d)(1) of determinations by the Internal Revenue Service (IRS) to uphold a Notice of Intent to Levy (levy notice) and the filing of a Notice of Federal Tax Lien (lien notice). The issue for decision is whether the IRS Office of Appeals abused its discretion in sustaining these collection actions.[2] We conclude that it did not.

———

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[2] On July 1, 2019, the IRS Office of Appeals was renamed the IRS Independent Office of Appeals. *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 981, 983 (2019). We will use the name in effect at the times relevant to this case, i.e., the Office of Appeals or Appeals.

[*2]                              *Background*

This case was submitted fully stipulated under Rule 122. The stipulated facts are incorporated by this reference. Petitioner resided in Maryland when he timely filed his Petition.

Petitioner did not collect, account for, and pay over employment taxes reportable on Form 941, Employer's Quarterly Federal Tax Return, for the second quarter of 2009 through the fourth quarter of 2012.[3] The IRS assessed civil penalties against him under section 6672 (commonly called trust fund recovery penalties).

To collect these outstanding liabilities from petitioner, in early 2016 the IRS issued first the levy notice, which covered the second quarter of 2009 through the third quarter of 2011, and then the lien notice, which covered the second quarter of 2009 through the fourth quarter of 2012.

Petitioner timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing, for each notice. In both hearing requests, petitioner indicated that he wanted a collection alternative, checking the boxes for "Installment Agreement," "Offer in Compromise," and "I Cannot Pay Balance."

Appeals Officer Wade (AO Wade) was assigned petitioner's administrative hearing requests. Petitioner provided numerous documents to AO Wade, including Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals. He offered to enter into an installment agreement under which he would pay $400 per month but would not liquidate any portion of his retirement account. This offered amount would not pay petitioner's liability by the collection period expiration date (CPED) and therefore was considered a partial payment installment agreement (PPIA).

AO Wade did not accept petitioner's offered PPIA. She noted an inability to separate his business and personal expenses. On the basis of her review of the documents petitioner provided, she determined that petitioner could make monthly payments of $3,375, and offered him an installment agreement for that amount; this agreement would have satisfied his outstanding tax liability within 72 months. AO Wade determined that he was not eligible for an offer-in-compromise because

---

[3] Section 6672(a) imposes the requirement to "collect, truthfully account for, and pay over any tax imposed by this title."

[*3] he could pay the liability in full by the CPED (and he never submitted a Form 656, Offer in Compromise). Petitioner rejected AO Wade's proposed installment agreement.

After AO Wade issued a notice of determination (original notice) sustaining both collection actions, petitioner timely petitioned this Court for review. The case then was remanded to Appeals for further consideration of documents that petitioner provided after the original notice.

Appeals Officer Teti (AO Teti) was assigned both the levy notice and the lien notice on remand. Petitioner gave AO Teti updated documents, including an updated Form 433–A. These documents showed that he had monthly income of $12,482 and a retirement account balance of $117,839.

During an in-person conference with AO Teti, petitioner asked whether he was eligible for an offer-in-compromise and offered to enter into a PPIA of $450 per month. In calculating this PPIA amount, he estimated monthly expenses of (1) $994 for vehicle ownership expenses for two vehicles (his monthly loan payments for the vehicles were $611 and $381, respectively); (2) $1,586 for health insurance expenses, which included $1,077 in premiums for a secondary health insurance plan; (3) $1,380 for home equity line of credit payments, which were in addition to the standard monthly housing expense for two people in his locale ($1,982); and (4) $950 for credit card payments. His offer did not include a downpayment from his retirement account.

After an initial review of the documents and information petitioner provided, AO Teti determined that he could afford an installment agreement of $4,400 per month which could fully pay his liability by the CPED. AO Teti initially proposed an installment agreement with monthly payments of $4,400 and a $40,000 downpayment from petitioner's retirement account. In the light of AO Teti's initial determination that petitioner could fully pay the liability by the CPED, AO Teti determined that he was not eligible for an offer-in-compromise.

Petitioner rejected AO Teti's initial proposal and again offered to enter into a PPIA of $450 per month with no downpayment, providing additional supporting documents. He did not challenge his underlying liability in the supplemental hearing with AO Teti or during the first administrative hearing with AO Wade.

**[\*4]** In the supplemental notice of determination (supplemental notice), AO Teti did not accept petitioner's PPIA offer because he determined that petitioner could pay a substantially higher amount under collection guidelines set forth in the *Internal Revenue Manual* (IRM).[4] AO Teti made a final determination that petitioner could afford a monthly payment of $4,059 and a downpayment of at least $9,197 from his retirement account.

To calculate the downpayment that petitioner could afford to make, AO Teti referenced IRM 5.15.1.27 (Nov. 17, 2014). Because petitioner had an individual retirement account, was close to retirement, and was over age 59½, AO Teti followed IRM 5.15.1.27(3), which instructed him to:

> Determine if the taxpayer will need the income from the plan to provide for necessary living expenses. If so, consider the impact on income and expenses when the taxpayer is expected to retire. If income from the plan will not be needed when the taxpayer retires, determine if the plan should be liquidated now or at the time the taxpayer retires to avoid the early withdrawal penalty. If the plan is liquidated early, equity is the cash value less any expense for liquidating the account and early withdrawal penalty.

AO Teti calculated the income shortfall that the plan would need to cover using petitioner's and his spouse's joint life expectancy, while also taking into account additional contributions over the subsequent years, and determined that petitioner could liquidate $13,728 of his retirement account and still have sufficient funds to cover living expenses. AO Teti then reduced the $13,728 by one-third for state and federal taxes to come up with a downpayment of $9,197 that would be required for an acceptable installment agreement.

In calculating the expenses that petitioner could claim for vehicle ownership, AO Teti allowed petitioner the standard amount under IRM 5.15.1.9 (Nov. 17, 2014) for the first vehicle ($497) and the actual loan payment for the second vehicle ($381), resulting in a total allowed vehicle ownership expense of $878 per month.

---

[4] Unless otherwise indicated, all IRM references are to the version of the IRM that was in effect on the date of petitioner's supplemental administrative hearing and the date the supplemental notice was issued.

**[\*5]** AO Teti allowed petitioner monthly expenses of $509 for his primary, employer-provided health insurance plan premiums; $1,982 for his housing expense, which was the standard monthly housing expense for two people in petitioner's locale; and a miscellaneous amount of $1,202 which can be applied to credit card debt. *See* IRM 5.15.1.10(3) (Nov. 17, 2014).

AO Teti noted that because petitioner requested a PPIA he was allowed only "necessary expenses" under IRM 5.15.1.7(1) (Oct. 2, 2012). AO Teti did not allow petitioner's claimed monthly expenses for excess vehicle ownership expenses, secondary health insurance premiums, non-housing-standard home equity line of credit payments, and non-miscellaneous credit card payments because they were not "necessary expenses."

Petitioner contended that the $1,077 expense for secondary health insurance premiums was necessary because a previous medical condition might return and he was unsure whether his primary health insurance would cover it. AO Teti determined that this argument was too speculative because it anticipated that his medical condition would return *and* his primary health insurance provider would refuse coverage. Petitioner also argued that existing federal law mandating coverage of preexisting conditions may be repealed or struck down and if that happened and he lost his job (the source of his primary health insurance) he might not be able to acquire health insurance covering his preexisting medical condition. AO Teti determined that this argument was too speculative because it hinged on federal law changing *and* petitioner losing his primary health insurance coverage.

Petitioner contended that the $1,380 expense for home equity line of credit payments and the $950 expense for credit card payments were necessary because if he stopped making these payments his credit score could be harmed which could affect his security clearance at his employment which could affect his ability to earn income. AO Teti noted that petitioner provided no supporting information for this credit-score argument and that outstanding tax debts also might be an issue for his security clearance. AO Teti also noted that allowing the home equity line of credit payments solely because of their potential effect on his credit score would "render the housing standard . . . meaningless." Finally, AO Teti noted that IRM 5.15.1.10(3) states that "[c]redit cards are generally considered a method of payment, rather than a specific expense" and that only the miscellaneous amount referenced in that

[*6] section can be applied to credit card debt—to allow an additional amount expressly for credit card debt in effect would duplicate expenses.

Petitioner rejected AO Teti's installment agreement and urged AO Teti to accept his offered PPIA of $450 per month with no downpayment. Petitioner did not dispute his underlying tax liability in the first or supplemental administrative hearing.

The supplemental notice sustained both collection actions, stating that petitioner's offered PPIA was too low considering his financial information and the IRM.

*Discussion*

I.    *Standard of review*

In a collection case our standard of review depends on whether the underlying tax liability is in issue. Where the taxpayer's underlying liability is properly at issue, we review the IRS's determination de novo. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). Section 6330(c)(2)(B) permits taxpayers to challenge the existence or amount of their underlying tax liability only if they did not receive a notice of deficiency or otherwise have a prior opportunity to contest that liability.

Where the underlying tax liability is not properly at issue, we review the IRS's determinations for abuse of discretion. *Hoyle v. Commissioner*, 131 T.C. 197, 200 (2008), *supplemented by* 136 T.C. 463 (2011); *Goza*, 114 T.C. at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). The burden is on the taxpayer to prove that the Appeals officer abused his discretion. Rules 122(b), 142(a); *see Woodral v. Commissioner*, 112 T.C. 19, 23 (1999).

Petitioner's underlying liability is not at issue (nor does he assert otherwise); therefore we review the IRS's determination for abuse of discretion.

II.   *Abuse of discretion*

In deciding whether an Appeals officer abused his discretion in sustaining a collection action, we consider whether he (1) properly verified that the requirements of applicable law or administrative

[*7] procedure have been met, (2) considered any relevant issues the taxpayer raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the [taxpayer] that any collection action be no more intrusive than necessary." §§ 6320(c), 6330(c)(3).

When this Court remands a case to Appeals and a supplemental determination is issued, we review the supplemental determination. *Hoyle*, 136 T.C. at 468. Our review of the record establishes that AO Teti properly discharged his statutory responsibilities in the supplemental determination.

### A. *Verification*

AO Teti reviewed and confirmed that all legal and procedural requirements were followed and that the collection actions were appropriate under the circumstances. Our review of the record confirms that AO Teti satisfied the verification requirement.

### B. *Issues raised*

Petitioner's primary contention is that AO Teti abused his discretion by rejecting petitioner's proposed PPIA of $450 per month with no downpayment. Petitioner argues that AO Teti acted arbitrarily by considering petitioner's retirement account as an asset and by disallowing various expenses.

Section 6159 authorizes the Commissioner to enter into written agreements allowing taxpayers to pay tax in installment payments if he deems that the "agreement will facilitate full or partial collection of such liability." Subject to exceptions not relevant here, the decision to accept or reject installment agreements lies within the discretion of the Commissioner. *See Thompson v. Commissioner*, 140 T.C. 173, 179 (2013); Treas. Reg. § 301.6159-1(a), (c)(1)(i). In reviewing an Appeals officer's determinations we do not make an independent evaluation of what would be an acceptable collection alternative. *See Thompson*, 140 T.C. at 179; *Murphy*, 125 T.C. at 320. Rather, our review is limited to determining whether he abused his discretion. *See Thompson*, 140 T.C. at 179.

The installment agreement petitioner proposed was a PPIA because he offered to pay some but not all of his outstanding liabilities by the CPED. AO Teti considered petitioner's collection alternative and rejected it because it was not in compliance with the IRM guidelines for

[*8] granting a PPIA. *See, e.g.*, *id.*; IRM 5.14.2.1 (Mar. 11, 2011). This is not an abuse of discretion; we have repeatedly held that an Appeals officer does not abuse his discretion when he adheres to published IRM collection guidelines. *See, e.g.*, *Eichler v. Commissioner*, 143 T.C. 30, 39 (2014); *Kelly v. Commissioner*, T.C. Memo. 2022-73, at *9.[5] Petitioner does not claim that the IRM guidelines are wrong. Rather, petitioner claims AO Teti misapplied the guidelines in making his determination. We therefore examine the IRM guidelines. *See Wadleigh v. Commissioner*, 134 T.C. 280, 294 n.13 (2010).

### 1. *Equity in assets: petitioner's retirement account*

We begin with petitioner's argument that his retirement account is off limits. The IRM states that "[b]efore a PPIA may be granted, equity in assets must be addressed and, if appropriate, be used to make payment," IRM 5.14.2.1(2), and "[f]unds held in a retirement . . . plan are considered an asset," IRM 5.15.1.27(1).

AO Teti followed IRM 5.15.1.27(3) by calculating the amount of petitioner's retirement account that would be needed to pay living expenses and reducing the amount that could be withdrawn to take into account federal and state taxes. Citing *Gurule v. Commissioner*, T.C. Memo. 2015-61, petitioner contends that AO Teti abused his discretion by not following the procedures under IRM 5.11.6.3 (Aug. 16, 2017), which provide instructions for levying against a retirement account.

But AO Teti was not levying against petitioner's retirement account. *Cf. Wadleigh*, 134 T.C. at 294–95 (reviewing IRM guidelines outlining the Commissioner's ability to levy on retirement income and accounts when the Commissioner sought to levy on those assets). Rather, he was evaluating petitioner's proposed PPIA, and under IRM 5.15.1.27(3) as part of his evaluation he considered petitioner's retirement account as an asset. We conclude AO Teti did not abuse his discretion in determining that petitioner could liquidate at least part of his retirement account to make a downpayment towards an installment agreement.

---

[5] However, the provisions of the IRM do not carry the force and effect of law or confer rights on taxpayers. *Eichler*, 143 T.C. at 39 (citing *Fargo v. Commissioner*, 447 F.3d 706, 713 (9th Cir. 2006), *aff'g* T.C. Memo. 2004-13).

**[*9]** 2. *Monthly expenses*

Additionally, "[t]he taxpayer must agree to pay the maximum monthly payment based upon the taxpayer's ability to pay." IRM 5.14.2.1.1(7) (Sept. 19, 2014). The Commissioner generally determines a taxpayer's ability to pay by subtracting allowable monthly expenses from the taxpayer's monthly income. For purposes of a PPIA, the taxpayer is allowed his "necessary expenses." *See, e.g.*, *Thompson*, 140 T.C. at 179–80. Necessary expenses are those "*necessary to provide for a taxpayer's and his or her family's health and welfare and/or production of income.*" IRM 5.15.1.7(1).

a) *Vehicle ownership*

The applicable standard for vehicle ownership expenses is $497 per month per vehicle. Petitioner requested $994 per month in vehicle ownership expenses for two vehicles. Petitioner's monthly loan payments for his two vehicles were $611 and $381, respectively. AO Teti properly followed IRM 5.15.1.9 by allowing petitioner the standard vehicle ownership expense ($497) for the vehicle with an auto loan above the standard and the actual vehicle ownership expense ($381) for the second vehicle.

IRM 5.15.1.9(1)(b.), Example 3, contemplates a similar factual scenario. The IRM states that "[i]f the loan payment for one vehicle exceeds the standard allowable amount for one car and the second loan payment is less than the standard allowable amount for one car, the allowable amounts are calculated separately." *Id.* The IRM example uses a standard of $478, a claimed amount for Car 1 of $550, and a claimed amount for Car 2 of $460. *Id.* The IRM explains that the taxpayer is allowed the standard for Car 1 ($478) and the actual amount for Car 2 ($460). *Id.* AO Teti applied the same reasoning in this case, and he did not abuse his discretion in disallowing excess amounts petitioner requested.

b) *Secondary health insurance plan*

AO Teti allowed petitioner's claimed monthly expenses for his primary health insurance plan but disallowed petitioner's claimed secondary health insurance plan expenses. In reviewing for abuse of discretion, the Court does not substitute its judgment for that of the Appeals officer. *Gurule*, T.C. Memo. 2015-61, at *28.

**[\*10]** Petitioner raised various arguments as to why the secondary health insurance expenses should qualify as necessary; however, AO Teti determined that petitioner's arguments were too speculative. He therefore concluded that secondary health insurance plan premiums did not meet the necessary expense test because petitioner failed to demonstrate that his secondary health insurance plan would provide for his and his family's health and welfare and/or production of income. *See* IRM 5.15.1.7(1). AO Teti did not abuse his discretion in concluding that petitioner's secondary health insurance plan premiums did not satisfy the relevant test in the IRM.

### c) *Home equity line of credit*

AO Teti allowed petitioner monthly expenses in accordance with the IRM housing standard guidelines. IRM 5.15.1.9(1). IRM 5.15.1.10(3) states that other secured debts are allowed only if they meet the necessary expense test. AO Teti concluded that the payments for petitioner's home equity line of credit were not necessary expenses because petitioner failed to demonstrate that the payments were necessary for his and his family's health and welfare and/or production of income. AO Teti's determination that allowing a home equity line of credit payment would defeat the purpose of the housing and other expense standards was a reasonable application of the IRM. It also was reasonable to reject petitioner's unsupported argument that his credit score could be damaged if he failed to make this payment, which could affect his security clearance, which could affect his employment.

### d) *Credit cards*

AO Teti allowed petitioner only a miscellaneous expense for credit card debt pursuant to IRM 5.15.1.10(3) (stating that credit cards are considered a method of payment and that "payments for the portion of the credit card debt reflecting necessary living expenses are provided for as allowable expenses under the national and local standards"). AO Teti reasonably concluded that the payments for credit card debt were not necessary expenses because petitioner failed to demonstrate that the payments were necessary for his and his family's health and welfare and/or production of income. Once again, he reasonably rejected petitioner's unsupported argument that his credit score could be hurt if he failed to make this payment, which could affect his security clearance, which could affect his employment.

**[*11]** C.     *Balancing*

The record indicates that AO Teti considered whether the collection actions balanced the need for the efficient collection of taxes with petitioner's legitimate concern that any collection action be no more intrusive than necessary. Because petitioner did not establish his eligibility for a collection alternative, AO Teti did not err in concluding that the collection actions were "no more intrusive than necessary." *See Kelly*, T.C. Memo. 2022-73, at *11. We conclude that AO Teti satisfied the balancing requirement.

III.     *Conclusion*

We hold that Appeals did not abuse its discretion in sustaining the proposed levy notice and filing of the lien notice. We have considered all arguments made and, to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate decision will be entered.*