# United States Tax Court

T.C. Memo. 2025-17

RICHARD L. BROWN AND CAMILLE C. BROWN,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

———————

Docket No. 160-24L.                    Filed February 18, 2025.

———————

*Scott E. Scammahorn*, for petitioners.

*Christopher S. Kippes* and *Judy M. Tejeda-Gonzales*, for respondent.

## MEMORANDUM OPINION

JENKINS, *Judge*: Richard L. Brown and Camille C. Brown (Petitioners) timely filed a Petition under sections 6320(c)[1] and 6330(d)(1), requesting that this Court review a Notice of Determination Concerning Collection Actions Under IRS Sections 6320 or 6330 of the Internal Revenue Code sustaining the filing of a Notice of Federal Tax Lien (NFTL) for the 2017 tax year (Current NOD).[2] The Current NOD, which rejected Petitioners' offer-in-compromise (OIC), was issued to Petitioners by Appeals Officer Maria Russo (AO Russo) of the Internal Revenue Service (IRS) Independent Office of Appeals (Appeals). Respondent filed a Motion for Summary Judgment (Motion) pursuant to Rule 121, contending that there are no disputed issues of material fact

———————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C.), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioners resided in Texas when the Petition was filed.

**[\*2]** and that it was not an abuse of discretion for AO Russo to reject Petitioners' OIC and sustain the NFTL. Petitioners filed a Response to Respondent's Motion for Summary Judgment (Response), arguing that disputed issues of material fact remain. This Court finds that there are no disputed issues of material fact and that AO Russo did not abuse her discretion in rejecting Petitioners' OIC and issuing the Current NOD. This Court will thus grant the Motion.

*Background*

The following facts are based on the parties' pleadings and Motion papers, including the Exhibits attached thereto, as well as the Administrative Record. *See* Rules 93, 121(c). The facts are stated solely for the purpose of ruling on the Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

I.    *Underlying Liability*

Petitioner Camille C. Brown operated an early childhood education facility. On May 30, 2017, the property out of which the facility was operated was sold (Facility Sale), a replacement facility having been acquired on January 25, 2017 (Facility Purchase). Petitioners filed Form 1040, U.S. Individual Income Tax Return, for the 2017 tax year reporting the gain from the Facility Sale as a taxable capital gain and reporting a tax liability of $605,597. The IRS assessed the self-reported amount of tax, interest on the unpaid portion of the tax, and additions to tax related to the late payment of tax and failure to make estimated payments with respect to the tax. *See* I.R.C. § 6201(a)(1).

II.    *Prior Collection Due Process Hearing*

The IRS had previously issued Petitioners a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, for the 2017 tax year. Petitioners requested a collection due process (CDP) hearing with Appeals and filed an OIC on the grounds that there was doubt as to liability. Appeals rejected Petitioners' argument that they should not be required to recognize gain from the Facility Sale on the basis that the Facility Sale and the Facility Purchase were intended to, although they did not technically, comply with the like-kind exchange rules of section 1031. Petitioners apparently did not specifically contest the additions to tax assessed by the IRS. The OIC was rejected, and

[*3] Appeals issued a final determination sustaining the proposed levy (Prior NOD).

### III.    *Before CDP Hearing at Issue*

The IRS subsequently issued Petitioners a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing under IRC 6320, for the 2017 tax year. The IRS received from Petitioners a timely filed Form 12153, Request for a Collection Due Process or Equivalent Hearing, on which Petitioners checked the boxes for "Installment Agreement" and "Offer in Compromise." They did not check the box for "I Cannot Pay Balance," but they separately stated that "[a] lien would cause the taxpayer a significant financial hardship." On October 27, 2022, AO Russo issued a Letter 4837 scheduling a CDP hearing. The letter also requested documents from Petitioners relating to their payment ability to be considered in connection with the requested alternative collection methods, including Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals.

Petitioners submitted Form 656, Offer in Compromise, Form 433–A, and Form 433–B, Collection Information Statement for Businesses. On the Form 656, under Section 3, "Reason for Offer," Petitioners checked the boxes for "Effective Tax Administration" and for "The amount offered is based on my exceptional circumstances other than economic hardship." They did not check the box for "Paying more than the amount offered would create a financial hardship." In a schedule attached to and referred to on the Form 656, Petitioners explained that the exceptional circumstances were that section 1031 should have applied because they "are educators . . . providing an invaluable service for the community" and they undertook the Facility Sale and Facility Purchase "in accordance with the spirit of the law." They also argued that "to penalize the taxpayers to the tune of nearly $500,000.00 plus penalties and interest is inequitable and places the taxpayers in a position of financial hardship." Petitioners' OIC proposed to pay a total of $75,000 with respect to their $605,597 liability.

The CDP hearing was rescheduled to allow Petitioners to send their OIC to the IRS's Centralized Offer in Compromise Unit, and AO Russo held Petitioners' case in abeyance so that the OIC could be considered. The Centralized Offer in Compromise Unit issued Petitioners a preliminary determination rejecting Petitioners' OIC. It concluded that Petitioners' ability to pay exceeded $5 million, such that

[*4] Petitioners had the ability to pay the liability in full, and there were no special circumstances to warrant a compromise based on economic hardship.

Thereafter, AO Russo had a conversation with Petitioners' counsel about the preliminary OIC determination, in which she informed him that it was her responsibility to make a final determination on the OIC and requested feedback. Petitioners' counsel sent AO Russo a letter disagreeing with the preliminary determination's OIC rejection. The letter reiterated Petitioners' argument concerning their compliance with the "spirit of the law" of section 1031. It also stated:

> The taxpayers disagree with the findings by the offer examiner as collectability is not at issue, nor is hardship, the examiner's stated reasons for rejecting the offer. Instead, their argument for acceptance of an offer is equity, which was not considered by the offer examiner.

## IV.    *CDP Hearing at Issue*

AO Russo then held a CDP hearing with Petitioners and their counsel. In response to their arguments concerning section 1031, AO Russo explained that the underlying liability could not be challenged because of Petitioners' prior opportunity for review of the underlying liability in the prior CDP hearing, and that, in any event, section 1031 did not apply. Petitioners' counsel separately raised a dispute with respect to the additions to tax, which he referred to as penalties, in response to which AO Russo reiterated that the underlying liability could not be challenged. She also explained that she agreed with the preliminary OIC determination. Petitioners did not present any other collection alternatives for consideration.

At the CDP hearing, Petitioners' counsel indicated that he did not believe proper procedures were followed, because he believed the OIC should have been sent to a special group in Austin, Texas, that handles effective tax administration OICs. AO Russo mistakenly indicated that the OIC had been processed by this special group that processes effective tax administration OICs on grounds other than economic hardship (ETA-NEH Group), even though it had not.

**[\*5]** V.    *After CDP Hearing at Issue*

After she subsequently discovered her mistake, AO Russo sent a request for an evaluation of Petitioners' OIC to the ETA-NEH Group on October 12, 2023, requesting a response by November 27, 2023. She explained that the OIC had originally not been referred under Internal Revenue Manual (IRM) 5.8.11.3.2 (Aug. 5, 2015), but that it was being forwarded for evaluation per IRM 8.22.7.4.2(2) (Aug. 26, 2020), because petitioners filed it on the grounds of effective tax administration other than economic hardship.

On October 18, 2023, an ETA-NEH Group offer specialist sent a response to AO Russo rejecting referral of the OIC to the ETA-NEH Group. The two-page memo explaining the rejection indicated that the case did not meet criteria for effective tax administration on grounds other than economic hardship. Consistent with the IRM, the memo indicated that some of the grounds on which public policy offers are considered involve criminal activity, IRS error or delay, and community impact. The memo indicated that the ETA-NEH Group offer specialist had considered impact to the community but had found that the community in which Petitioners' early childhood education facility existed had numerous childcare and early childhood centers. The memo also noted that the IRS will not compromise on issues because of a taxpayer's belief that a provision of the law is unfair, as indicated in IRM 5.8.11.3.2.1(7) (Oct. 4, 2019). It concluded that because Petitioners clearly owed the liability and there was "minimal (if any) impact to the community," transfer of the case would not be accepted, as the case did not meet any of the criteria for consideration.

The memo also explained the requirements for a section 1031 exchange and how Petitioners failed to satisfy them. In his response to AO Russo, the ETA-NEH Group offer specialist attached Fact Sheet FS-2008-18, a publicly available IRS fact sheet about section 1031 exchanges that outlines the requirements for application of section 1031. The IRS fact sheet makes clear that separate sales and purchases would not qualify, but rather would constitute taxable transactions.

AO Russo forwarded the memo from the ETA-NEH Group offer specialist and the fact sheet to Petitioners on October 19, 2023, and requested feedback by November 20, 2023. No feedback was provided, and on December 4, 2023, AO Russo issued the Current NOD.

**[\*6]** VI.     *The Current NOD*

The Current NOD sustained the filing of the NFTL for Petitioners' 2017 tax year. It explained that the liability was properly assessed and is legally due and owing. It also explained that Petitioners were precluded from challenging the underlying liability, given that they had had a prior opportunity to do so upon receipt of the Letter 1058 and during the CDP hearing that led to the Prior NOD. In summary, the Current NOD indicated that Petitioners submitted an OIC based on effective tax administration grounds other than economic hardship, which was rejected because compromise on public policy grounds is not authorized if it is based solely on a taxpayer's belief that a provision of the tax law is unfair. It also indicated that Petitioners did not want to submit any other collection alternatives for consideration, as they said payment of the liability was not at issue. Therefore, the Current NOD explained, no collection alternative could be agreed to.

In addition, the Current NOD (1) reviewed the Prior NOD and the discussion of Petitioners' prior contest of the underlying liability in the CDP hearing that preceded it, before explaining why a challenge of the underlying liability was precluded because of that contest; (2) described the terms of the OIC submitted by Petitioners and the OIC unit's preliminary determination with respect to it; and (3) laid out the ETA-NEH Group offer specialist's analysis of Petitioners' OIC. It also quoted extensively from Petitioners' submissions and set forth details of discussions with Petitioners and their counsel.

VII.     *Parties' Positions*

In their Petition, Petitioners challenge the determination in the Current NOD, arguing that AO Russo abused her discretion by denying Petitioners their due process rights by failing to address the collection alternative Petitioners raised in their CDP hearing before her. The Petition quotes a letter from Petitioners' counsel, as follows: "An offer in compromise may be accepted based on effective tax administration when (1) there is no doubt that the tax is legally owed and (2) the full amount can be collected, but (3) requiring payment would either create an economic hardship or would be unfair and inequitable."

Petitioners posit that (1) the foregoing is a summary of the test laid out by Treasury Regulation § 301.7122-1(b)(3)(ii); (2) the IRS failed to address the third element of that test; and (3) that failure constitutes a per se abuse of discretion. Petitioners focus on statements in the

**[\*7]** Current NOD affirming their legal liability for the liability underlying the NFTL and argue that such statements indicate that the IRS did not consider whether requiring payment would create economic hardship or be unfair and inequitable. Petitioners do not specifically raise a challenge to the underlying liability in the Petition.

Respondent moved for summary judgment on all issues. In their Response, Petitioners argue that summary judgment is precluded by a genuine dispute of material fact. Petitioners reiterate their argument that the IRS did not address a necessary element of the test in the regulations and summarize: "However, Respondent asserts that the test was followed. That is the disputed fact that defeats summary judgment."

*Discussion*

I.  *Summary Judgment Standard*

Summary judgment serves to "expedite litigation and avoid unnecessary and expensive trials." *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). Either party may move for summary judgment regarding all or any part of the legal issues in controversy. Rule 121(a)(1). Generally, summary judgment may be granted only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 121(a)(2). The party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Sundstrand Corp.*, 98 T.C. at 520; *see also* Rule 121(c)(1).

In deciding whether to grant summary judgment, the Court considers factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. The nonmoving party may not rest upon mere allegations or denials in the pleadings and must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Although Petitioners argue that there is a dispute of material fact, they are "dressing up a legal challenge in fact clothing in an attempt to sidestep summary judgment." *See Capitol Places II Owner, LLC v. Commissioner*, No. 16536-23, 164 T.C., slip op. at 9 (Jan. 2, 2025). The dispute that Petitioners posit is with respect to the issue of whether the IRS properly applied Treasury Regulation § 301.7122-3(b)(2). That is a legal question that is at the heart of this Court's review of the Current NOD. Given that Petitioners have not raised any other disputed

**[\*8]** facts, this Court finds, on the basis of the record before it, that this case is appropriate for summary adjudication.

II.    *Standard for Review*

If the underlying tax liability is not at issue, the Court reviews the settlement officer's determination for abuse of discretion. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). In reviewing for abuse of discretion, the Court does not conduct an independent review of the collection alternatives and does not substitute its judgment for that of the settlement officer; rather, the Court's review is limited to determining whether the settlement officer's decision was arbitrary, capricious, or without sound basis in fact or law. *Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). If the underlying tax liability was properly at issue in the CDP hearing, the Court reviews the determination de novo. *Lunsford v. Commissioner*, 117 T.C. 183, 185 (2001) (citing *Goza*, 114 T.C. at 181–82).

In a CDP hearing, a taxpayer may raise challenges to the existence or amount of an underlying liability only if the taxpayer did not receive a statutory notice of deficiency for the tax liability or did not otherwise have an opportunity to dispute the tax liability. *See* I.R.C. §§ 6320(c), 6330(c)(2)(B); Treas. Reg. § 301.6320-1(e)(1). These challenges may include challenges to liabilities reported on a self-filed return. Treas. Reg. § 301.6320-1(e)(1). The term "underlying liability" includes any tax deficiency, additions to tax or penalties, and statutory interest. *See Montgomery v. Commissioner*, 122 T.C. 1, 7–8 (2004); *Katz v. Commissioner*, 115 T.C. 329, 338–39 (2000). An opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after assessment of the liability unless the opportunity was prior to the assessment of a tax subject to deficiency procedures. *See* Treas. Reg. § 301.6320-1(e)(3), Q&A-E2; *see also Lewis v. Commissioner*, 128 T.C. 48, 61–62 (2007).

In the course of their interaction with AO Russo, Petitioners suggested disputes with their underlying liability for 2017, particularly with respect to the additions to tax. However, as AO Russo explained in the Current NOD, Petitioners had a chance to dispute their underlying liability for 2017, including the additions to tax, during their CDP hearing that led to the Prior NOD. *See* Treas. Reg. § 301.6320-1(e)(1), (3), Q&A-E2. Therefore, even if they chose not to specifically dispute the additions to tax in the prior hearing, they were precluded from disputing

**[\*9]** the full amount of the underlying liability, including the additions to tax, in the CDP hearing before AO Russo. *Id.*; *see also McCullar v. Commissioner*, T.C. Memo. 2014-150, at \*8. Accordingly, this Court reviews AO Russo's determination for abuse of discretion. *Sego*, 114 T.C. at 610; *Goza*, 114 T.C. at 181–82.

In conducting this review, this Court looks to the reasons offered in the Current NOD, as supplemented by other documents in the record, such as the preliminary determination letter from the Centralized Offer in Compromise Unit and the referral rejection letter from the ETA-NEH Group, as well as AO Russo's case activity notes and Form 14559, Appeals Offer in Compromise Rejection Memorandum, dated November 29, 2023. *See Serna v. Commissioner*, T.C. Memo. 2022-66, at \*8; *see also Melasky v. Commissioner*, 151 T.C. 93, 106 (2018) ("[W]e will uphold a notice of determination of less than ideal clarity if the basis for the determination may reasonably be discerned . . . ."), *aff'd*, 803 F. App'x 732 (5th Cir. 2020); *Kasper v. Commissioner*, 150 T.C. 8, 24–25 (2018) ("Although we may not accept any *post hoc* rationalizations for agency action provided by the Commissioner's counsel, we may consider any 'contemporaneous explanation of the agency decision' contained in the record."); *cf. Antioco v. Commissioner*, T.C. Memo. 2013-35, at \*25 ("Applying *Chenery* in the CDP context means that we can't uphold a notice of determination on grounds other than those actually relied upon by the Appeals officer." (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943))).

III.    *Framework for OIC Based on Effective Tax Administration*

Section 7122(a) authorizes the Secretary to compromise an outstanding tax liability. Treasury Regulation § 301.7122-1(b) lays out potential grounds for compromise. The first potential ground for compromise, doubt as to liability, *see id.* subpara. (1), was the basis for Petitioners' prior OIC that led to the Prior NOD. Compromise may also be based on doubt as to collectibility. *See id.* subpara. (2). And finally, compromise may be entered into to promote effective tax administration, *see id.* subpara. (3), which was the stated ground for Petitioners' OIC that led to the Current NOD. Both doubt as to collectibility OICs and effective tax administration OICs require an evaluation of taxpayers'

**[\*10]** reasonable collection potential (RCP). *See* IRM 5.8.11.5.2(1) and (2) (Aug. 5, 2015).[3]

A compromise to promote effective tax administration may be entered into when the IRS determines that, although collection in full is possible, it would cause the taxpayer economic hardship. *See* Treas. Reg. § 301.7122-1(b)(3)(i). Economic hardship would arise if a taxpayer would be unable to pay his or her reasonable basic living expenses. *See* Treas. Reg. § 301.6343-1(b)(4); *see also* Treas. Reg. § 301.7122-1(b)(3); IRM 5.8.11.3.1(2) (Oct. 4, 2019).

If the economic hardship ground for effective tax administration and other grounds do not apply, the IRS may compromise to promote effective tax administration if compelling public policy or equity considerations identified by the taxpayer provide a sufficient basis for compromising the liability. *See* Treas. Reg. § 301.7122-1(b)(3)(ii). The regulations provide that compromise is justified only if, due to exceptional circumstances, collection of the full liability would undermine public confidence that the tax laws are being administered in a fair and equitable manner. *Id.* They further provide that no compromise to promote effective tax administration may be entered into if it would undermine compliance with the tax laws. *Id.* subdiv. (iii).

The IRM indicates that acceptance of an OIC based on considerations of equity and public policy will generally be based on a combination of facts and circumstances. *See* IRM 5.8.11.3.2(1). In addition the IRM lists compelling factors to consider when examining a public policy or an equity OIC. *See id.* 5.8.11.3.2.1. As relevant to this case, according to the IRM, accepting a public policy or an equity OIC may be appropriate where rejecting it would cause a significant negative impact on the taxpayer's community. *Id.* 5.8.11.3.2.1(5). A public policy or an equity OIC is not appropriate unless the taxpayer's argument is based on more than a belief that a provision is unfair. *Id.* 5.8.11.3.2.1(7); *see also Gillette v. Commissioner*, T.C. Memo. 2018-195, at \*22 (citing the IRM in a case concluding that the IRS did not abuse its discretion in rejecting an OIC on effective tax administration grounds), *aff'd*, 801 F. App'x 398 (7th Cir. 2020).

---

[3] Citations herein are to provisions of the IRM as in effect during AO Russo's consideration of Petitioners' case.

**[\*11]** IV.    *Evaluation of Appeals' Determination*

This Court considers whether AO Russo (1) properly verified that the requirements of any applicable law or administrative procedure were met; (2) considered any relevant issues Petitioners raised; and (3) considered whether the proposed collection actions balance the need for the efficient collection of taxes with the legitimate concern of Petitioners that any collection action be no more intrusive than necessary. *See* I.R.C. §§ 6320(c), 6330(c).

A.    *Verification*

This Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised that issue at the CDP hearing. *See Hoyle v. Commissioner*, 131 T.C. 197, 202–03 (2008), *supplemented by* 136 T.C. 463 (2011). However, because Petitioners have not challenged verification, no issues with AO Russo's review have been raised. This Court concludes, from a review of the record, that AO Russo conducted a thorough review of the record and verified that all applicable requirements were met. Accordingly, this Court concludes that there was no abuse of discretion with regard to the verification requirement.

B.    *Issues Raised by Petitioners*

Petitioners allege that AO Russo abused her discretion by failing to address a requirement of Treasury Regulation § 301.7122-1(b)(3)(ii). Specifically, in the Petition they argue that she failed to address whether "requiring payment would either create an economic hardship or would be unfair and inequitable." As a preliminary matter, Treasury Regulation § 301.7122-1(b)(3)(ii) provides for compromise on the basis of compelling public policy or equity considerations, consistent with the focus of Petitioners' Response. Compromise on the basis of economic hardship is separately addressed under Treasury Regulation § 301.7122-1(b)(3)(i). Given the lack of clarity in Petitioners' arguments before this Court, this Court will review AO Russo's analysis under both provisions. This is also consistent with the governing framework set forth in both the regulations and the IRM, under which economic hardship is to be considered before public policy and equity considerations.

**[\*12]**    1.    *Economic Hardship*

Petitioners' muddling of issues in their arguments before this Court is consistent with their positions in filings before the issuance of the Current NOD. Although the Form 656 indicated that it was being submitted on effective tax administration grounds other than economic hardship, and subsequent correspondence disclaimed economic hardship, Petitioners made some statements about economic hardship on their Form 656 and in an attachment thereto. Accordingly, and consistent with IRM 5.8.11.5.2(1) and (2), the Centralized Offer in Compromise Unit considered Petitioners' RCP and whether paying their liability would impose an economic hardship on them. AO Russo appropriately considered the unit's preliminary determination rejecting Petitioners' OIC.

Although economic hardship is not addressed in the brief "Summary and Recommendation" portion of the Current NOD, the Current NOD does both describe Petitioners' OIC and the preliminary determination that Petitioners had the ability to pay in full and that their special circumstances did not present a hardship. The record reflects that AO Russo (1) reviewed the underlying analysis performed by the Centralized Offer in Compromise Unit, which indicated that Petitioners' ability to pay exceeded $5 million; (2) held a call with Petitioners' counsel to discuss the preliminary determination, requesting Petitioners' feedback; and (3) responded to that feedback accordingly in proceeding with the analysis on grounds other than economic hardship when Petitioners disclaimed economic hardship. Accordingly, this Court finds that AO Russo did not abuse her discretion in declining to accept Petitioners' OIC on the basis of effective tax administration economic hardship grounds.

2.    *Public Policy or Equity Considerations*

The greater focus of the Current NOD on the potential bases for an effective tax administration OIC other than economic hardship makes sense given the foregoing background. AO Russo did not originally seek review of Petitioners' OIC by the ETA-NEH Group, as suggested by the IRM. *See* IRM 5.8.11.3.2(1), 5.8.11.5.1(8) (Oct. 4, 2019), 8.22.7.4.2(2) (Aug. 26, 2020). However, although failure to do so would not be dispositive, *see Eichler v. Commissioner*, 143 T.C. 30, 39 (2014) ("[P]rovisions of the IRM do not carry the force and effect of law or confer rights on taxpayers."), the fact that she did promptly refer it once her

**[\*13]** attention was called to that oversight is consistent with her diligence throughout her handling of the case.

The memo that the ETA-NEH Group offer specialist prepared for AO Russo summarizes the IRM's requirements for compromise on the basis of public policy and equity considerations and concludes that Petitioners' OIC does not satisfy them. In particular, the memo demonstrates that the ETA-NEH Group offer specialist did consider the particular facts and circumstances of Petitioners' case, given that he researched the state of early childhood education facilities in Petitioners' area in order to determine whether their OIC would have any impact on their community, per IRM 5.8.11.3.2.1(5). The Current NOD reiterates this analysis. In considering a taxpayer's qualification for a collection alternative, such as an OIC, it is not an abuse of discretion to rely on guidelines set forth in the IRM. *See, e.g.*, *Siebert v. Commissioner*, T.C. Memo. 2021-34, at \*18.

Furthermore, those guidelines and the ETA-NEH Group offer specialist's analysis are consistent with the regulatory indications that (1) compromise is justified only if, due to exceptional circumstances, collection of the full liability would undermine public confidence that the tax laws are being administered in a fair and equitable manner, *see* Treas. Reg. § 301.7122-1(b)(3)(ii), and (2) compromise may not be entered into if it would undermine compliance by taxpayers with the tax laws, *see id.* subdiv. (iii). As explained in the memo and the attached Fact Sheet FS-2008-18, separate sales and exchanges do not qualify for special tax treatment under section 1031, and taxpayers generally undertake specific structuring to ensure qualification. Accordingly, it was not an abuse of discretion for AO Russo to conclude that allowing Petitioners to effectively obtain the tax benefits of section 1031 without satisfying its requirements, through their minimal OIC, would undermine taxpayer compliance. Furthermore, it was not an abuse of discretion for her to conclude that instead of collection undermining confidence in fair and equitable tax administration, entering into the OIC would do so.

Consistent with this understanding, the Court has explained that OICs are not intended to override substantive tax law. *See Speltz v. Commissioner*, 124 T.C. 165, 177 (2005) ("We do not discern in section 7122 an intent of Congress to override application of specific provisions of the tax laws in every instance in which the liability is perceived to be unfair or inequitable. . . . A fortiori, individual revenue officers and Appeals officers, carrying out their respective functions in the IRS

**[\*14]** collection process, cannot be expected to engage in the type of statutory interpretation urged on us by [the taxpayers] or to nullify unfortunate consequences of the tax laws on a case-by-case basis."), *aff'd*, 454 F.3d 782 (8th Cir. 2006). Furthermore, the Court has rejected the idea that a settlement officer's refusal to effectively override statutory provisions on effective tax administration grounds other than economic hardship constitutes an abuse of discretion. *See id.* at 178–79 ("Accepting [the taxpayers'] position would result in nullification of a portion of the statutory scheme by administrative or judicial action. We cannot conclude that section 7122 gives the Court a license to make adjustments to complex tax laws on a case-by-case basis. . . . Moreover, we cannot conclude that it is an abuse of discretion for the Appeals officer to decline to do so. In this case we conclude that the Appeals officer correctly applied the provisions of the regulations and of the Internal Revenue Manual, specifically those portions cautioning against granting relief based on inequity where to do so would undermine congressional intent."). Consistent with this precedent, this Court finds that AO Russo did not abuse her discretion in declining to accept Petitioners' OIC based on effective tax administration grounds other than economic hardship.

### C. *Balancing Analysis*

Petitioners do not allege that AO Russo failed to consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." *See* I.R.C. §§ 6320(c), 6330(c)(3)(C). They thus have conceded this issue. *See* Rule 331(b)(4); *see also Ansley v. Commissioner*, T.C. Memo. 2019-46, at *19. In any event AO Russo concluded in the Current NOD that the filing of the NFTL balanced the need for efficient tax collection with Petitioners' concern about intrusiveness because Petitioners provided neither a valid justification to withdraw the lien nor a viable collection alternative. This Court concludes that there was no abuse of discretion in this determination.

### V. *Conclusion*

There are no disputes of material fact, and judgment may be rendered as a matter of law. Finding no abuse of discretion, this Court will grant the Motion and sustain Appeals' determination to sustain the filing of the NFTL to collect Petitioners' unpaid liability for tax year 2017. This Court has considered all arguments made by the parties and,

**[*15]** to the extent they are not addressed herein, deems them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate order and decision will be entered.*